Kasmer *v.* Metropolitan Life Insurance Company,
Appellant.

Argued October 26, 1939.

Before Keller, P. J.,
Cunningham, Baldrige, Stadtfeld, Parker, Rhodes
and Hirt, JJ. ▮▮▮▮▮▮

*Richard Henry Klein,* with him *Harry Cole Bates,*
for appellants.

*John L. Pipa, Jr.,* for appellee, submitted a brief.

Opinion by Parker, J., April 22, 1940:

This action in assumpsit to recover the face amount
of a life insurance policy was tried before three juries
and each time the jury disagreed and was discharged.
After the third trial defendant moved for judgment not-
withstanding the disagreement of the jury and after
argument the motion was overruled. It appears to be
now settled by the case of *Conley v. Mervis,* 324 Pa.
577, 188 A. 350, that in the circumstances present here
an appeal lies from the refusal of the court below to
enter judgment after disagreement under the Act of
April 20, 1911, P. L. 70 (12 PS §684). Such a judg-
ment may be entered only when binding instructions
should have been given on the trial: *Derrick v. Harwood
Electric Co.,* 268 Pa. 136, 111 A. 48.

The insured, Anna Kasmer, then seventeen years of
age, made application for the policy on April 10, 1935,

and on the same day Dr. Smigelski, acting for the defendant, made a physical examination of the insured. On April 15, 1935, the defendant issued to her a life insurance policy naming her mother, the plaintiff, as beneficiary. The application was attached to and made a part of the policy. The policy provided that all statements made by the insured "shall, in the absence of fraud, be deemed representations and not warranties." On April 19, 1935, the insured suffered a rupture and was taken to a hospital where she died on April 25, 1935, from peritonitis following a ruptured tubo-ovarian abscess.

The insurance company admitted the issuing of the policy, the payment of all premiums due, the death of the insured and that a physical examination of the insured was made by its physician before the policy was issued, but alleged that the insured in her written application knowingly and fraudulently made certain false representations as to matters material to the risk. Since a medical examination was made by the defendant before the policy was issued, the burden was on the insurer to prove, in addition to falsity, fraud on the part of the insured in the making of the statements: *Stein v. New York Life Ins. Co.*, 319 Pa. 225, 227, 179 A. 589. The immediate question, however, is whether the insurer established its defense by a character of proof that required the court to say as a matter of law that judgment should be entered in its favor. "Whenever disputed questions of fact are presented by conflicting evidence, whether documentary or oral, or whenever the insurer's defense depends upon the testimony of its witnesses, even though such testimony is uncontradicted, the case must be submitted to the jury, subject to the trial court's power to award a new trial as often as in its sound discretion it may think the interests of justice require": *Evans v. Penn Mutual L. Ins. Co.*, 322 Pa. 547, 560, 186 A. 133.

We will therefore confine our attention for the present

to a consideration of those alleged false statements which are claimed by the insurer to have been made knowingly and fraudulently. "Where the statements are made representations, the insurer, to avoid the policy, must show they were false and insured knew they were false or otherwise acted in bad faith in making them. (3) If such falsity and the requisite bad faith affirmatively appear (a) from competent and uncontradicted documentary evidence, such as hospital records, proofs of death, or admissions in the pleadings, or (b) from the uncontradicted testimony of plaintiff's own witnesses, a verdict may be directed for the insurer": *Evans v. Penn Mutual L. Ins. Co.*, supra, p. 560. We will remark in passing that both plaintiff and defendant departed in some respects from their pleadings, without serious objection, and we will therefore confine our attention for the most part to the actual proofs.

The application contained the following questions and answers: "7. (a) When last sick: Month, Nov.; Year, 1934; (b) Nature of last sickness: La grippe (c) How long sick? One week ...... 11. Have you had any surgical operation, serious illness or accident? If yes, give date, duration and name of ailment: No ...... 18. Have you been attended by a physician during the last five years? If yes, give name of complaints, dates, how long sick, and the names of physicians. La grippe. Dr. M. E. Smoczynski, Nov. 1934, one week. 19. Have you had any treatment within the last five years at any dispensary, hospital or sanitorium? If yes, give date, duration, name of ailment and name of institution: No." While there was a mass of oral testimony tending to show that the insured was for a considerable period suffering from a severe illness, that she was attended by a number of physicians within a time so recent that she could not have forgotten these occurrences, it is with the documentary proofs and plaintiff's admissions that we are now concerned. It is admitted that the in-

sured had her tonsils removed in a hospital within four or five months before her death. The records of the Ashland State Hospital introduced in evidence show that Anna Kasmer, the insured, was admitted to that institution on December 15, 1934, and was discharged nine days later and that she was attended by three physicians other than Dr. Smoczynski. We quote from those records pertaining to her stay in that hospital: "Interne Dr. Reichwein Visiting Physician Dr. Robinhold Diagnosis—Provisional-appendicitis? Dr. Stanulanis Final-pelvic abscess Dr. Reichwein ...... Case History C. C. (Chief Complaint)—Pain in lower abdomen HPI (History present illness)—Patient has had occasional attacks of pain in lower abdomen, especially on the left side for several months. On 12/12 pain became more severe. Patient has a foul smelling vaginal discharge between her periods. Periods always regular. No urinary symptoms. PMH (Past medical history) Negative. P. E. (Physical Examination) Young adult female. Not acutely ill. Head, eyes: Negative. Mouth: Tonsils large and cryptic. Chest: Exp. No rales. Heart: Negative. Abdomen—rounded, tenderness over both Morris Points to superficial and deep palpation. No masses ...... Treatment or Medication Fowler position Liquid diet 12/17 Hot lysol douche Bid (twice a day) W. B. C. (White blood count) and Diff. (Differential—percentage of different kinds of white blood cells) Urinalysis R. 12/20 Pot. citrate (potassium citrate) gr. 15, q. 45 (means every four hours) R. 12/24 —discharged. R. ...... Treatment 12/15 Fast—Prep. for possible appendectomy A. M. 12/16 Morp. Sulph. gr. 1/6 Atropine Sulp. gr. 1/200 when called 12/21 Fast for local tonsillectomy. R. ...... Progress Sheet Name—Anna Kasmer File—74794 12/24 Discharged today Diagnosis—Acute salpingitis Hypert. & diseased tonsils. Reichwein." Acute salpingitis is regarded as a serious disease and was defined as an infection in the fallopian tubes.

If the proofs had stopped here the trial court would have been obliged to enter judgment for the defendant. Attendance by two physicians not named, treatment at a hospital and previous serious illness were matters material to the risk: *Boltz v. Metropolitan Life Ins. Co.,* 128 Pa. Superior Ct. 147, 153, 193 A. 400, and cases there cited. The answers were shown to be untrue by uncontradicted documentary proofs and by admissions on trial by the plaintiff and they concerned matters that were of such recent occurrence and were of such a character that the insured could not have forgotten them. "It is sufficient to show that they were false in fact and that insured knew they were false when he [she] made them ......, since an answer known by insured to be false when made is presumptively fraudulent": *Evans v. Penn Mutual L. Ins. Co.,* supra, p. 553.

But the plaintiff offered oral testimony tending to show that the insured when being examined reported to the examining physician all the matters relied upon by the insurance company as a defense and asked that the inference be drawn that the answers were not correctly recorded by the examiner. The insurance company in turn insisted that even if the correct facts were given the examining physician and they were incorrectly recorded by him that would not overcome the definite limitations contained in the policy. This brings us to the serious question in the case.

The plaintiff, when called as a witness, testified that she was present when her daughter, the insured was examined by the defendant's physician, that she heard her daughter tell the examining doctor that Dr. Smoczynski had sent Anna to Ashland State Hospital "for tonsils"; that she had a pain in her abdomen when in the hospital and they gave her medicine and douches; that Anna had been to see Doctors Allen, Smoczynski and Lustusky and that she knew that Anna had been to see Dr. Allen about February 25, 1935.

Leo Kasmer, a brother of Anna, testified that he was

examined for an insurance policy at the same time as his sister and heard the sister tell the examining physician that she was in Ashland State Hospital for tonsilitis and had her tonsils taken out and after she got some medicine they sent her home. Nellie Costa, another witness present at the examination, gave testimony of the same purport as that given by the brother. There was also much oral evidence tending to show that Anna appeared to be a healthy, strong and rugged girl doing the household work at home and even assisting her father at mining coal.

It should be noted that there is not a suggestion that anything was added to the application or removed from it after it was signed by the insured.

The application signed by the insured and attached to the policy contained the following provisions: "It is understood and agreed: 1. That the foregoing statements and answers are correct and wholly true, and, together with the answers to questions on Part B hereof, they shall form the basis of the contract of insurance, if one be issued ...... 3. That no statements made to or by, and no knowledge on the part of, any agent, medical examiner or any other person as to any facts pertaining to the Applicant shall be considered as having been made to or brought to the knowledge of the Company unless stated in either Part A or B of this application ...... I hereby certify that I have read the answers to the questions in Part A hereof and to the questions in Part B hereof, before signing, and that they have been correctly written, as given by me, and that they are full, true and complete, and that there are no exceptions to any such answers other than as stated herein."

At the oral argument a question was raised as to the effect of the Act of July 19, 1935, P. L. 1319 (40 PS §511a). Since the insured died before the effective date of that statute it cannot legally be applied to this action: *Horsfield v. Metropolitan Life Ins. Co.*, 124 **Pa.**

Superior Ct. 458, 466, 189 A. 892. Consequently we must treat with the law as it was prior to that statute.

The plaintiff argues that the circumstance that she did make known the true facts to the examiner is sufficient to show that the statements in the application were not made fraudulently and consequently that it would be for a jury to accept or reject the oral testimony. This ignores the further facts that the insured certified that she had read the answers to the questions in the application and that they were correctly given by her and were true and correct when in fact they were incorrect and that she agreed that no statement made to the medical examiner pertaining to the applicant should be considered as made to or brought to the knowledge of the company unless set forth in the application. To sustain the plaintiff's argument we must hold that the written terms of the agreement for insurance are not binding on the insured.

The general subject of the admissibility of evidence intended to show that answers in applications for insurance were not recorded as they were given by the insured has frequently been considered by the appellate courts but in most of the cases the statements were by the contract made warranties and not representations. In the late case of *Roney v. Clearfield Co. Grange Ins. Co.,* 332 Pa. 447, 3 A. 2d 365, many of those cases are reviewed and analyzed by Mr. Justice Stern with his usual clarity. The conclusion there stated is that where there is a warranty the modern rule is that an applicant for insurance is under the "duty of ascertaining the contents of the application before signing it, unless, perhaps, he is illiterate, or is in some way tricked into signing."

In *Rinker v. Aetna Life Ins. Co.,* 214 Pa. 608, 64 A. 82, the Supreme Court affirmed the action of the trial court in rejecting an offer by plaintiff of parol evidence tending to show that the insured had signed the paper without reading it and that the answers written down

by the examiner were not the answers given by insured. The application contained an explicit agreement, just as here, that no statement made to the agent or examiner should be considered as having brought notice of such fact to the company. While the statements were there warranted to be true the court turned the decision on the ground that the authority of the agent was limited, saying (p. 612): "Here the power of the agent was limited, and notice of such limitation given by being embodied in the application, which the assured was required to make and sign, and which, as we have stated, he must be presumed to have read. He is, therefore, bound by its statements." In the present case the insured in addition specifically certified that she had read the answers as recorded and it is not even suggested that anything was added to the application after it was signed. In *Koppleman v. Commercial Cas. Ins. Co.,* 302 Pa. 106, 153 A. 121, the answers were not described as representations or warranties but it was provided that the right to recovery under the policy should be barred in the event that any of his statements material to the risk were false. Here the contract provided that the answers should be deemed representations but that "they shall form the basis of the contract of insurance, if one is issued." There, as here, it was again provided that the company was not bound by statements made to the agent unless recorded in the application. The same kind of oral evidence as was offered here was tendered by the plaintiff and refused. On appeal the action of the lower court was sustained.

If the statements had been warranted there is no doubt that the evidence would be of no avail. We think that the same reasoning should be applied to this contract. In the Rinker case although there was a warranty the decision was grounded on the circumstance that it was agreed that statements made to the examiner should not constitute notice to the company and not upon the fact that there was a warranty. In the Kop-

pleman case the reasoning by Mr. Justice (now Chief Justice) SCHAFFER was the same. Here we are not asked to infer that the insured had read the answers for she certified that she had read them and that they were correct and there is no suggestion of illiteracy or inability to read. While fraud in answering the questions was required to be shown by the company in order to avoid liability the insured agreed when she applied for the policy not only that she had read the application but that no statements made to the examiner and not recorded should be taken as notice to the company and that the answers should "form the basis of the contract of insurance."

If we adopt the reasoning of the plaintiff we must hold that the insured's covenant is illegal and void but those very covenants were upheld in the Rinker case and the Koppleman case. Also see *New York Life Ins. Co. v. Fletcher*, 117 U. S. 519, 6 S. Ct. 837. In that case Mr. Justice FIELD said: "The company, like any other principal, could limit the authority of its agents, and thus bind all parties dealing with them with knowledge of the limitation. It must be presumed that he [the insured] read the application, and was cognizant of the limitations therein expressed." Mr. Justice DREW in the Evans case, p. 552, recognized the right of the parties to contract with reference to the effect of answers when he said: "Whether true answers were made, and whether the answers as made were correctly written down by the agent of the insurance company, and the good faith of the party making the answers to the best of his knowledge and belief, are questions which go to the very essence of the insurance risk, and parties should not be denied the right to have such matters determined before a proper tribunal *unless they have covenanted otherwise.*" (Italics supplied.) [1]

It appears from the admissions and documentary evi-

---

[1] The question was specifically left open in *Stein v. New York Life Ins. Co.*, supra, p. 230.

dence that the insured knowingly and fraudulently made false answers in her application and the plaintiff is barred by the contract of insurance from showing that the insured made different statements to the examiner than were recorded. The beneficiary is not entitled to recover and judgment should have been entered for the defendant.

The order of the court below is reversed and it is directed that judgment be now entered for the defendant.