## Usher *v.* Pittsburgh & Lake Erie Railroad Company, Appellant.

Argued October 3, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN and PATTERSON, JJ.

*William S. Rial,* with him *H. E. Marker, H. E. Marker, Jr., John J. Heard* and *Reed, Smith, Shaw & McClay,* for appellant.

*Vincent R. Smith,* with him *George H. Frich,* for appellee.

OPINION BY MR. JUSTICE DREW, November 25, 1940:

Defendant, after the refusal of the court below to enter judgment n. o. v. in its favor, appealed from the entry of judgment on the verdict for plaintiff, in this action of trespass for damages arising out of a grade crossing accident.

On March 29, 1935, at about 9 a. m., John Usher, plaintiff, employed by the Township of Rostraver, Westmoreland County, was driving a heavily loaded truck, owned and operated by the township. He approached the Whitsett Railroad Crossing, located in Fayette County, where there are six tracks, three of the Pittsburgh Coal Company and three of the defendant company. Between the two sets of tracks is a so-called island, about 26 feet wide, on which it was customary for drivers to stop before crossing the second set of tracks. About 170 feet west of the crossing, the direction from which defendant's train came, was situated a coal tipple over the tracks of the Pittsburgh Coal Company, with a conveyor to the tipple over the defendant's tracks.

Plaintiff first came to the tracks of the Pittsburgh Coal Company where, he testified, he stopped, looked and listened for an oncoming train, but neither seeing

nor hearing one, crossed those tracks to the island where he stopped at a point 8 feet back from the nearest rail of defendant's tracks, and looked and listened. He said he did not alight from the truck and go forward to look for an approaching train because he had a better view from the cab of the truck since "there is a down grade to the track and from my seat I could look into the turn." This, and the fact that the point where plaintiff stopped on the island was the customary stopping place before crossing the tracks, was substantiated by several witnesses. Plaintiff further testified that his range of vision was limited to around 170 feet. This too was corroborated by witnesses who testified that there was a misty rain that morning which caused the coal dust from the tipple to hang low over the tracks, and had the effect of reducing the range of vision.

After satisfying himself that no train was approaching, plaintiff started to make the crossing, and his truck was struck by a fast moving freight train, coming from the west, before the front wheels of the truck had completely crossed the first track. Plaintiff was injured seriously and the truck was badly damaged. He and various witnesses testified that they heard no whistle or bell, or any other warning signal, and that had there been any warning given, they would have heard it. Testimony offered by plaintiff shows that the speed of the train was approximately 45 miles per hour; which is at the rate of 66 feet per second. After the collision the train ran about 2,000 feet beyond the crossing before it came to a stop.

These would seem to be the essential facts developed at the trial. The negligence of defendant may be conceded for the purpose of this decision. The testimony on that point was sufficient to require that the case be submitted to the jury. The problem here is to determine if plaintiff was guilty of contributory negligence as a matter of law.

Mr. Justice MITCHELL, speaking for this court in *Ely v. Railway,* 158 Pa. 233, 236, said:

"The cases beginning with *R. R. Co. v. Heileman,* 49 Pa. 60, and *R. R. Co. v. Beale,* 73 Pa. 504, have established not only the rule that the traveler about to cross a railroad track must stop, look, and listen, as an absolute and unbending rule of law, founded in public policy for the protection of passengers in railroad trains, as much as of travelers on the common highway, but also that such stopping, looking and listening must not be merely nominal or perfunctory, but substantial, careful, and adapted in good faith for the accomplishment of the end in view. Hence the necessary corollaries of the rule were drawn in *R. R. Co. v. Feller,* 84 Pa. 226, and *Carroll v. R. R. Co.,* 12 W. N. 348, and *Marland v. R. R. Co.,* 123 Pa. 487, that the traveler must stop and look where he can see, and that he will not be allowed to say that he did so, when the circumstances make it plain that the proper exercise of his senses must have shown him the danger. These principles are settled beyond question, but the application of them to the infinite varieties of circumstances and evidence in accident cases is not always easy. All that this court can do is to lay down the general rules, and to say that where the facts are uncontested or the inference of negligence the only one that can be drawn, the court must pronounce the result as matter of law, but where the facts are in dispute, or the inference from them open to debate, they must go to the jury. . . ."

In *Olive v. Director Gen. of R. R.,* 275 Pa. 173, 174, 175, this court said:

"A clouded sky, together with a fog of disputed density, made visibility difficult, but plaintiff said it was possible to see down the track some two hundred feet, the driver estimated it at about three hundred feet; however, as they approached the railroad, their view was temporarily obstructed by a pile of ties and a box car on the siding. Neither seeing nor hearing anything,

they started forward at about two miles an hour,—all that low gear and a heavily loaded truck, weighing ten tons, would permit,—and, when they were crossing the main track, the rear end of the truck was struck by the train. Plaintiff testified that the truck was stopped at the place where it was customary for travelers to stop, look and listen before crossing. On the above-stated facts, the case was for the jury: *Siever v. Pittsburgh, etc., Ry. Co.,* 252 Pa. 1, 8."

In *Bush v. Philadelphia & Reading Railway Company,* 232 Pa. 327, 328, Mr. Justice STEWART said for this court:

"The testimony of the driver, if believed, shows literal compliance on his part with those rules of duty, the nonobservance of which this court has repeatedly said must be adjudged negligence per se. He stopped, looked and listened before entering upon the tracks with his machine. While none of the other witnesses called on behalf of the plaintiff would positively confirm all that the driver testified to, none of them testified directly to the contrary of what he said, while all admitted that appearances as they were there presented to bystanders supported the driver's testimony. The place where he stopped his machine was about nine feet from the first track. Admittedly, before reaching this point he had passed no place where he could have had a view of an approaching train. Whether he stopped a sufficient length of time to inform himself of conditions, and whether he advanced with due caution from that point, were questions to be determined not by hard and fast rules of positive duty applicable in all cases, but by the jury upon a consideration of all the circumstances in the case, not the least important of which was the fact appearing here that the time required to pass from the place where the driver stopped his machine to the place where the collision occurred, was but three or four seconds at most. . . . While upon the whole evidence the jury might well have hesitated be-

fore reaching their conclusion that this driver stood clear of negligence, yet the question was exclusively for them, since the evidence to establish negligence on his part was not so clear or positive as to exclude other inference."

To establish that plaintiff was guilty of negligence as a matter of law, defendant relies principally upon the rule laid down in *Carroll v. Penna. R. R. Co.*, 12 W. N. C. 348, 349, that "It is in vain for a man to say that he looked and listened, if, in despite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive." The contention is that where a person either walking or riding, has entered upon a railroad track and is then so instantly struck, the presumption he used due care is rebutted as a matter of law, even though he did stop before he entered the crossing. We think this rule has no application here. The facts in this case are such that although plaintiff did stop, look and listen, his limited vision, the low speed of the truck and the high speed of the train, make it possible that the train did not appear in sight until after plaintiff was committed to the crossing. If the train was not in sight when plaintiff drove upon the track, and he could not hear it approaching, how can it be fairly affirmed that in spite of what his eyes and ears must have told him he drove in front of a moving train and was immediately struck: *Thomas v. Penna. R. R. Co.*, 275 Pa. 579, 583. It must be remembered that plaintiff could only see about 170 feet and a train running at 45 miles per hour would cover this distance in less than 3 seconds, a very short space of time to get a heavy truck under way after having looked for the train. We refused to apply this rule in *Mills v. Penna. R. R. Co.*, 284 Pa. 605, where the facts resemble those of the present case, and said, ". . . it was for the jury to say whether the approaching train was in sight before the driver of the truck entered on the crossing." It is not clear that the truck was driven directly in front of the

train, apparently in plain view: *Harris v. Reading Co.,* 325 Pa. 296, 302. The rule applies in clear cases only.

What would a reasonably prudent man do in the very circumstances which confronted plaintiff, immediately before he entered upon the crossing? Our answer is that such a careful man would do exactly what plaintiff says he did, he would stop, he would look, and he would listen. And not seeing any train approaching, looked for from the most advantageous place; and not hearing any sound of a train, when listening attentively; he would then do the only thing he could do to get to the other side, he would start to drive over the tracks despite the fact that a train traveling at a rapid speed might, without any notice, come out of the distance and strike him before he could possibly get across. Under the circumstances in which plaintiff was placed, there is always risk, which the law recognizes, but the law has never gone to the extent of forbidding a traveler to cross a railroad track which obstructs a public road except at his peril.

In acting on this motion for judgment n. o. v., we have been mindful that the testimony should be read in the light most advantageous to plaintiff, and that he must be given the benefit of every fact, and inference of fact, pertaining to the issue involved which may reasonably be deduced from the evidence: *Hostetler v. Kniseley,* 322 Pa. 248, 250. And we have also had in mind that "It is only in clear cases where the facts are undisputed and but one inference can be drawn from them that courts can declare as a matter of law a party guilty of contributory negligence. . . . Whether he did all that his duty required him to do depended upon the facts and unless in a very clear case, it is always the province of the jury to determine the facts.": *Witmer v. Bessemer & L. E. R. R. Co.,* 241 Pa. 112, 114, 115.

Judgment affirmed.