## E. A. Bream Company *v.* Baltimore and Ohio Railroad Company, Appellant.

Argued April 21, 1942.

Before KELLER,

P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KEN-
WORTHEY, JJ. 

*Vincent M. Casey,* of *Margiotti, Pugliese & Casey,*
with him *John B. Greer,* for appellant.

*J. Campbell Brandon,* with him *W. D. Brandon,* of
*Brandon & Brandon,* for appellee.

OPINION BY KELLER, P. J., July 23, 1942:

Two legal questions are involved in this appeal: (1)
Does an appeal lie from the order of the court below?
(2) Was the plaintiff's driver guilty of contributory
negligence, as matter of law? We think both must be
answered in the affirmative.

1. The plaintiff brought an action of trespass to re-
cover the damages to its automobile caused by a col-
lision with defendant's train. Defendant presented a
point for binding instructions in its favor, which the
court refused. The jury disagreed. Defendant then
obtained a rule to show cause why judgment should not
be entered in its favor upon the whole record (Act of
April 20, 1911, P. L. 70, 12 PS §684), which the court
discharged. Defendant appealed.

The Supreme Court, in the case of *Lipsky v. Stolzer,*
236 Pa. 151, 84 A. 688, held that an appeal did not
lie from an order dismissing such a motion or discharg-
ing such a rule. But in its later pronouncements that

Court has ruled that an appeal will lie where binding instructions should have been given for the defendant, unless the lower court, in refusing the motion, stated that, in its opinion, error, prejudicial to the plaintiff, had been committed on the trial, or that it deemed a new trial necessary to do substantial justice: *Phillips v. American Stores Co.*, 342 Pa. 33, 35-6, 20 A. 2d 190; *Conley v. Mervis*, 324 Pa. 577, 588, 188 A. 350; *McFadden v. Pennzoil Co.*, 336 Pa. 301, 303, 9 A. 2d 412. See also, *Kasmer v. Metropolitan Life Ins. Co.*, 140 Pa. Superior Ct. 46, 12 A. 2d 805, cited with approval in *Phillips v. American Stores Co.*, supra; *Auto. Banking Corp. v. Drahus*, 140 Pa. Superior Ct. 469, 471, 13 A. 2d 874. In the present case the lower court gave no such reason for its action, but placed its decision solely on the point that the contributory negligence of the plaintiff's driver was a question of fact for the jury. It follows, therefore, that if at the close of the case, defendant having offered no evidence, its point for binding instructions should have been affirmed, because the negligence of plaintiff's superintendent, who was driving the automobile, had been established as matter of law, an appeal will lie to this court from the discharge of its motion and rule for judgment on the whole record; in order that this court may "here enter the judgment which the court below should have entered": *Conley r. Mervis*, supra, p. 588.

(2) We are of opinion that the evidence of plaintiff's superintendent, the driver of the automobile, convicted him of contributory negligence as matter of law.

The accident took place at a point in Penn Township, Butler County, where the McCalmont road crosses a single track line of the defendant company. It is known as McCalmont's Crossing. Henry R. Smith, plaintiff's superintendent and general manager, who drove the car, lived in the vicinity and was familiar with the location of the road and railroad.

McCalmont road runs parallel with defendant's rail-

road for about 300 feet, on a somewhat lower level. At a point about 145 feet from the crossing the road starts to slope up the hill and crosses the railroad at a sharply acute angle. To the left[1] of this crossing the railroad begins a convex curve towards the south, around the base of a hill, a ten-foot embankment supporting the track.

On the morning of February 14, 1940, about 7:10 o'clock, Mr. Smith was driving plaintiff's Chevrolet coupe on the McCalmont road on plaintiff's business in the direction of this crossing. Mr. Smith said, "It was enough daylight that you didn't need lights on", and he had none on. It had snowed during the night and was still snowing. The snow was eight to ten inches deep and no track had been broken on the road at this point. He had chains on the rear wheels. He stopped his car at a point 145 feet from the crossing, where the upward slope began, and looked and listened. The windows of his car were closed, but the "ventilator window" in the door on each side was open *slightly*. Where he stopped, the road was about nine or ten feet lower than the railroad. He could see the railroad to the right of the crossing for about 200 feet. He could see scarcely any of it to the left of the crossing. He went into low gear and drove up the slope at about five miles an hour. There was a comparatively level place just before the road crossed the railroad, but he did not stop there. At the crossing one could see the railroad to his right for about 150 feet, and for about the same distance to his left. The reason Mr. Smith gave for not stopping again before he came to the railroad track was that he was afraid his car would stall. He continued on his way, looking through the glass in the door as he

---

[1] We use the terms 'left' and 'right' with respect to the situation of one approaching the crossing as plaintiff's driver was traveling. The points of the compass would be confusing in the absence of a draft.

went, but as he entered on the track, because of the snow, he could see only about fifty feet.[2] He heard no bell or whistle. When his front wheels were in the center of the railroad track, he was hit by a train coming from his right—traveling from Butler to Pittsburgh —which dragged or pushed his coupe for some distance on the track and it then went down a ten-foot embankment about fifty feet from the crossing.

There was no testimony that the place where Mr. Smith stopped, looked and listened was the usual or customary place for doing so; there could not be, for from that point there was practically no view of the railroad to the *left* of the crossing. The railroad crossing sign was on the level space at the top of the slope. On *direct* examination Mr. Smith testified: "Q. Mr. Smith, would you have a better view of a train coming from Butler towards this crossing at the point you stopped or a better view up near the track? A. You have a better view nearer the track" (p. 53a).

The rule requiring one to stop, look and listen before crossing a railroad track is an unbending one and it is complied with only where the stop is made at a point from which the driver can reasonably discover whether a train is approaching—"Stopping where one cannot see is little better than not stopping at all" *(Craig v. Penna. R. Co.,* 243 Pa. 455, 457, 90 A. 135) ; and stopping only at a point so far from the crossing that a train, not then in view, could easily arrive at the cross-

---

[2] Mr. Smith testified: "The best view you have of the train is right near the tracks. In clear weather from the driver's position in the car you could see around 150 feet; standing on the ground you could see considerable further than that, 450 feet or over, but in the driver's position in my particular coupe I could see around 150 feet leaning over. Q. That morning? A. Not that morning. Q. In that snow? A. Not that morning. Q. What view did you have of the track from the point right at the rail? ...... A. I could estimate it; I didn't measure it; I could see around 50 feet" (p. 14a).

ing by the time the traveler on the road drives on the track, is not a compliance with this unbending rule (*Penna. Railroad v. Beale*, 73 Pa. 504), unless that is the *usual and best* stopping place to observe an approaching train.[3]

While plaintiff's driver traveled 145 feet up the slope, in low gear, at five miles an hour, a train going twenty to thirty miles an hour would cover 600 to 900 feet, so that when the driver stopped, looked and listened the train might easily have been 400 to 700 feet beyond his view. To attempt a crossing of the railroad, in such circumstances, without stopping again, although a better view was obtainable as he got nearer the crossing, is negligence per se, as matter of law: *Hill v. Penna. R. Co.*, 90 Pa. Superior Ct. 429; *Engleka v. B. & O. R. R. Co.*, 136 Pa. Superior Ct. 388, 7 A. 2d 734; *Reigner v. Penna. R. Co.*, 258 Pa. 257, 101 A. 995; *Hanigan v. Phila. & R. Ry. Co.*, 257 Pa. 236, 101 A. 640; *Sellers v. Phila. & R. Ry. Co.*, 214 Pa. 298, 63 A. 606; *Canfield v. B. & O. R. R. Co.*, 208 Pa. 372, 57 A. 763; *Hubert v. Reading Co.*, 129 Pa. Superior Ct. 200, 195 A. 659; *Sefton v. B. & O. R. R. Co.*, 64 Pa. Superior Ct. 218. It was snowing when Smith stopped 145 feet from the track, just as much as it was when he attempted the crossing. "The poorer the visibility, the greater the duty of vigilance": *Fidelity Trust Co. v. Penna. R. R.*

---

[3] In *Muckinhaupt v. Erie R. R.*, 196 Pa. 213, 46 A. 364, the plaintiff was driving two horses to a top buggy after dark on a country road which was crossed by defendant's railroad tracks at and oblique angle making a crossing *forty-five feet long.* By reason of a deep cut some 500 or 600 feet away and a curve of the track, the best view of an approaching train was from a point 175 feet from the crossing, as between that place and the crossing the view was obstructed by an embankment. This point was also the usual place of stopping to look and listen. Plaintiff stopped there, and then drove on. His buggy was struck at the *right* hind wheel on the last track, after the *left* hind wheel was clear of the tracks. The facts were wholly unlike this case.

*Co.,* 326 Pa. 195, 197, 191 A. 609; *Minella v. Penna. R. R. Co.,* 309 Pa. 479, 484, 164 A. 520. If he had stopped before going on the track, he would not have been hit, for he was struck when his front wheels were in the center of the track—almost immediately on attempting the crossing. His fear of stalling his engine was not a sufficient excuse for violating an unbending rule of law.

The case of *Usher v. Pittsburgh & Lake Erie R. R. Co.,* 340 Pa. 234, 16 A. 2d 387, on which appellee and the court below relied, was very different from this one in its facts. In that case there were six tracks to be crossed, three of the Pittsburgh Coal Company and three of the defendant railroad. Between the two sets of tracks there was an 'island', so-called, about twenty-six feet wide on which it was customary for drivers to stop, look and listen before crossing the second set of tracks. About 170 feet west of the crossing, the direction from which defendant's train came, there was situated a coal tipple over the tracks of the Pittsburgh Coal Company, with a conveyor to the tipple over defendant's tracks. Plaintiff first came to the tracks of the Pittsburgh Coal Company, where he stopped and looked and listened for an oncoming train, but neither seeing nor hearing one, he crossed those tracks to the 'island', where he stopped at a point eight feet back from the nearest rail of defendant's tracks and looked and listened. His range of vision from there was around 170 feet. As he saw and heard no train approaching he started to make the crossing and was struck by a fast-moving freight train before the front wheels of the truck had completely crossed the first track. A recital of the facts distinguishes that case from this one. If Mr. Smith had stopped eight feet from the defendant's track and looked and listened, he would not have been hit; or if he had been hit in those circumstances, he would not have been guilty of contributory negligence as matter of law, and plaintiff would have been entitled to have its case go to the jury.

The motion to quash is refused. The assignments of error are sustained. The order of the court below is reversed and judgment is now entered, on the whole record, in favor of the defendant.