Doris J. **STURDEVANT, Administratrix of the Estate of Clyde D. Sturdevant, Plaintiff,**

v.

**ERIE LACKAWANNA RAILROAD COMPANY, Defendant.**

**Civ. A. No. 36–69 Erie.**

United States District Court, W. D. Pennsylvania.

Dec. 3, 1970.

See also D.C., 50 F.R.D. 3.

Act of Congress providing for the protection of civil rights, * * *"

Andrew J. Conner, Erie, Pa., for plaintiff.

Robert L. Walker, Meadville, Pa., for defendant.

## OPINION

WEBER, District Judge.

This is a diversity negligence action controlled by Pennsylvania law. Plaintiff's decedent met his death in a collision between an automobile which he was driving and defendant's train at a grade crossing near Lottsville, Warren County, Pennsylvania. The highway, running north and south, crosses two sets of tracks at approximately right angles. These tracks are approximately eighty feet apart. Going north as he was proceeding the driver would first come upon a crossbuck railroad warning sign which warned of the crossing and additionally of "two sets of tracks", at the side of the road to his right. Directly thereafter he would pass the first set of tracks which was a side-track or "town track" which cut off from the main track some distance to the east of the highway and went westward across the highway into a feed mill located along the west side of the highway at this point From the first set of tracks described the highway rises at an approximately eight percent grade for about eighty feet to a crest where it crosses the main line track of defendant railroad. Beyond the main line track to the north was another crossbuck railroad warning sign on the west side of the highway to warn south-bound traffic of the crossing.

Plaintiff argues that the position of these two warning signs at the extreme outer borders of both sets of tracks and approximately one hundred feet apart establish this area as a single railroad "crossing" with consequent duties upon the parties in relation thereto.

Other physical features of the crossing affect this case. On the west side of the highway to the left of the north-bound driver there is a feed mill at the point where the side track crosses the highway. This feed mill blocks a driver's view of defendant's east-bound trains coming from the west on the main line track for some distance. However, at the point sixty feet before reaching the main line tracks the driver passes the feed mill and has a clear view of approaching trains from the west for a considerable distance. Continuing to the north toward the main track upgrade a driver does not come in sight of the rails of the main track until he is within eight to twelve feet from them.

The weather was foggy, it was breaking daylight, the driver's headlights were on, and the driver had traversed this crossing almost daily for two or three weeks prior thereto. The defendant's train was approaching from the west, its headlight was on and its diesel horn was sounded on approaching the crossing. The engineer of defendant's train observed the lights of the automobile as it passed behind the feed mill when the train was about one thousand feet from the crossing. There is no evidence as to whether the driver stopped before crossing the side track but he continued to approach the main track at a low rate of speed and appeared to be slowing down. The car did not stop and was struck in the front by the train immediately upon entering upon the main line track.

The jury returned a verdict for the defendant railroad and plaintiff has moved for a new trial citing errors in the court's charge.

The principal argument directed against our charge with respect to the question of decedent's contributory negligence concerns whether this is a multi-track crossing where the strict rule of Stop, Look and Listen at each track is modified.

Plaintiff argues that the Stop, Look and Listen rule is applied to a "crossing"; that the driver must stop before entering a "crossing" as that word is employed in Tomasek v. Monongahela Rwy. Co., 427 Pa. 371, 235 A.2d 359 [1967], but that once having entered upon a multi-track crossing the decedent had no affirmative duty to stop a second time. In the Tomasek case the court uses the word "crossing" throughout, but the opinion indicates that only one set of tracks is involved.

"But, having once stopped in the exercise of reasonable care before entering upon the crossing, he was not bound, as a matter of law, *to stop* again on or between the tracks to look and listen." (emphasis by the Court). Baker v. Pennsylvania R. R. Co., 369 Pa. 413, 420, 85 A.2d 416, 419 [1952].

This court charged, more than once, that a person must stop, look and listen before crossing any *track*, and that this rule applied to both the town-line and the main track in this case. The court then instructed the jury that there was a qualification to this rule where a multiple track crossing was involved, in that a party need not stop for each track but must continue to look and listen but must continue ahead until all the tracks were cleared.

The court then left the question of reasonable care under the circumstances to the jury as to whether the decedent should have proceeded ahead until he cleared the crossing or whether he was required to stop again before crossing the main track.

We have no definition of what constitutes a multi-track crossing as distinguished from two separate but neighboring crossings. The railroad witnesses considered this area as one crossing. To satisfy the Pennsylvania Public Utility Commission's requirements of crossing protection a crossbuck warning sign was erected on the right hand side of the extreme southern boundary of the area, and another crossbuck sign facing southbound traffic was located at the extreme northern end. These signs are approximately one hundred feet apart, and the space between the side track and the

main track has been estimated as approximately eighty feet.

■■■ Because the Stop, Look and Listen rule is a rule of judicial derivation we can only say that it presents a standard of reasonable care and therefore it is properly a question for the jury whether this separation of the tracks required a reasonable driver, in the exercise of due care, to stop, look and listen a second time.

In applying the Stop, Look and Listen rule where more than one track is to be crossed, the most explicit expression of the rule is:

> "The plain intendment of the ruling in the Muehlhof case [309 Pa. 17, 162 A. 827] is that where a traveller stops, looks and listens before entering upon a grade crossing and, neither seeing nor hearing anything approaching on the tracks, proceeds and is thereafter struck by a train on a track beyond the first, the question of his contributory negligence is for the jury." Baker v. Pennsylvania R.R. Co., 369 Pa. 413, 419, 85 A.2d 416, 419.

However, in Jursic v. Pittsburgh & Lake Erie RR Co., 376 Pa. 142, 102 A.2d 150, it was held that such contributory negligence was generally for the jury, but where the negligence of the driver after passing the first track is clearly manifest he may be declared guilty of negligence as a matter of law.

[3] Even if in the present case, the plaintiff decedent was required to stop only once, he was still under a duty to proceed with care, and a jury question is presented if he did so.

The court did not, as plaintiff argues, allow this jury to decide if this was a multi-track crossing. Such a decision is meaningless because it carries no hard and fast rule of negligence as a necessary part of such definition. The court allowed the jury to determine whether, under the circumstances of these separated tracks, the decedent observed the requisite standard of care.

In Usher v. Pittsburgh & Lake Erie RR Co., 340 Pa. 234, 16 A.2d 387, 1940 where there were six tracks, in two sets of three separated by a twenty-six foot island, and where plaintiff testified that he stopped a second time in the twenty-six foot island, established by the testimony as a customary stopping place for the second set of tracks, a verdict for the plaintiff was sustained when the court found the question of plaintiff's conduct properly submitted to the jury, against defendant's contention that because plaintiff was immediately struck upon the first track of the second set he is presumed guilty of negligence as a matter of law. The court, nevertheless, relied on the testimony that plaintiff did stop again before crossing the second set of tracks.

In Baltimore & O. RR Co. v. Muldoon, 102 F.2d 151 [3rd Cir., 1939], where Pennsylvania law was applied, although plaintiff testified that he stopped before crossing the first of two sets of tracks, and was then hit on the second set, the court reversed a judgment for the plaintiff because the physical circumstances were such that he either did not see what was obviously approaching, or that he did not stop at a point where he would have adequate observation of all the tracks; in either case he would be guilty of negligence as a matter of law.

■■ Thus a corollary of the Stop, Look and Listen rule is that a plaintiff must stop, to look and listen, at a point where he has an adequate view. E. A. Bream Co. v. Baltimore & Ohio R. R., 149 Pa.Super. 164, 27 A.2d 898 [1942].

■■ We can find no case that squarely supports plaintiff's contention that there is no affirmative duty to stop except on approaching a "crossing". While some more recent cases use the word "crossing" instead of "tracks", Tomasek v. Monongahela Rwy. Co., cit. supra, the great body of cases under the Stop, Look and Listen rule speak of the duty to stop before entering on the "tracks". We believe that the words may be used interchangeably and that no relaxation of the Stop, Look and Listen rule is made by the technical designation for other pur-

poses, of two separate railroad tracks almost one hundred feet apart, as a single crossing.

The multiple track exception to the Stop, Look and Listen rule in the Pennsylvania cases grew out of the presumption that was applied where one was struck by a moving train instantly on entering the first track. Because a decedent is presumed to have used due care, and thus to have stopped, looked and listened, this presumption is rebutted when it is obvious that he risked the danger of immediate collision. However, in those cases where the decedent has already crossed several tracks of a multiple crossing before being struck, the rationale of the rule disappears. This has been historically applied in many cases. Thomas v. Pennsylvania R. R. Co., 275 Pa. 579, 119 A. 717 [1923] (accident on second track); Mills v. Pennsylvania RR Co., 284 Pa. 605, 131 A. 494 [1925] (last rail of second track); Welsh v. Pennsylvania RR Co., 313 Pa. 87, 169 A. 95 [1933] (fifth track); Cage v. New York Central RR Co., 276 F.Supp. 778 [W.D. Pa., 1967] aff'd p. c. 386 F.2d 998 [3rd Cir. 1967].

The strict application of the Stop, Look and Listen rule is also modified in a multiple crossing for another reason:

> "Committed to the crossing, he is in a position of peril, in a 'danger zone', as Justice Maxey denominated the entire width of the five track crossing in the *Mills* case, supra." Baker v. Pennsylvania R. R. Co., 369 Pa. 413, 420, 85 A.2d 416, 420 [1952]

The eighty foot space of the highway between the side track and the main track cannot be considered a "position of peril" in this case. In all the multiple track crossing cases reviewed the courts have considered situations where upon clearing one track a vehicle finds itself upon the next track, and so on until he has cleared the crossing.

We believe, that under the circumstances of this case, the charge that the driver must stop, look and listen before crossing any track was proper.

Plaintiff further argues that the court erred in refusing to charge the jury on the question of wanton and wilful misconduct. Plaintiff argues that the evidence supports his request in two aspects; the conduct of the engineer in failing to slow or stop the train after seeing plaintiff's decedent in a position of peril, and the corporate conduct of defendant railroad in failing to provide a more adequate warning system at this crossing.

Plaintiff's "position of peril" argument is based on evidence that the engineer saw the lights of the automobile moving toward the main track in the area between the two tracks. Plaintiff argues that this places the automobile in a position where the engineer knows that a collision is inevitable unless he takes some action in an attempt to avoid it. The cases applying that rule have been those where an engineer or motorman has actually seen a vehicle at a position so near or upon the tracks as to become aware either that the driver has not seen the approach of the train, or is unable to extricate himself from the crossing in time to avoid the collision. In Cage v. New York Central R. Co., 276 F.Supp. 778 [W.D.Pa., 1967], aff'd p. c. 386 F.2d 998 [1967], the engineer saw three automobiles already committed to a seven track crossing when he first came into view from a distance of 2,000 feet away. These cars were in a position of peril because they could not know on which of the seven tracks the train would cross, and they could not have seen the approaching train before. They had to continue moving forward.

In *Cage* we made an extensive examination of the cases allowing a wanton and wilful charge and found in each of them an actual position of peril obvious to the engineer and motorman which required him to take some action to attempt to avoid a collision. His failure to do so under the circumstances has been described as:

> "Wanton misconduct, on the other hand, 'means that the actor has inten-

tionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences' * * Prosser, Torts § 33 at 151 (2d ed. 1955)." Evans v. Philadelphia Trans. Co., 418 Pa. 567, 212 A.2d 440 [1965].

■ Here what the engineer saw was an automobile slowly approaching the main tracks, appearing to slow down. The engineer could see its lights and knew that the train's lights were on and its diesel horn was sounding. The engineer had no indication that the driver did not see and hear the train's approach nor that he would not stop before coming upon the tracks. The automobile was never in a position of peril at any time until the very last minute when it proceeded on to the track and was instantly struck. Prior to that time it was in a position of safety slowly approaching and decreasing its speed, at a point where for sixty feet nothing obstructed the sight and sound of the approaching train. The engineer had a right to rely on the assumption that it would stop before entering on the track under these circumstances. We see nothing indicating wilful and wanton misconduct on the part of the enengineer.

■ Plaintiff further argues that the maintenance of this double crossing without different or additional warning signals was corporate wilful and wanton misconduct on the part of the railroad. The railroad's duty is to give adequate warning of the approach of trains. A sign warning of the crossing, and further noting the presence of two tracks was present. The locomotive's light was on and its horn sounding. The jury was instructed to consider whether the railroad was guilty of negligence in failing to warn under these circumstances. We cannot know if the jury found the defendant negligent or the decedent contributorily negligent. We refused a charge that would allow the jury to pass on wilful and wanton misconduct which, if found, would remove the bar of decedent's contributory negligence. There is no question of a defective or misleading automatic signal here as was present in *Cage*, supra, or in Baltimore & O. R. Co. v. Felgenhauer, 168 F.2d 12 [8th Cir., 1948], or a deliberate invitation to come upon the tracks as was also present in *Felgenhauer*, supra. DiFrischia v. New York Central R. Co., 307 F.2d 473 [3rd Cir., 1962] only concerns the question of allowing the jury to consider contributory negligence of the driver where special conditions or hazards are present at the crossing to overcome the imputation of contributory negligence of the driver as a matter of law. That was done in the present case and the question of contributory negligence under the peculiar circumstances of this crossing was submitted to the jury. We find no authority in Pennsylvania law to support the contention that failure to use any particular type of crossing protection devices constitutes wilful and wanton negligence.

### ORDER

And now this 3rd day of December, 1970, Plaintiff's Motion for New Trial is denied.