**Doris J. STURDEVANT, Administratrix of the Estate of Clyde D. Sturdevant, Appellant,**

v.

**ERIE LACKAWANNA RAILROAD COMPANY.**

**No. 71–1119.**

United States Court of Appeals, Third Circuit.

Argued Jan. 28, 1972.

Decided April 13, 1972.

Andrew J. Conner, Dunn, Wolford & Sesler, Erie, Pa., for appellant.

Robert L. Walker, Thomas, Shafer, Walker, Dornhaffer & Swick, Meadville, Pa., for appellee.

Before McLAUGHLIN, HASTIE and VAN DUSEN, Circuit Judges.

---

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

The plaintiff in this diversity action appeals from a jury verdict in favor of the defendant. Clyde D. Sturdevant ("Sturdevant") died from injuries sustained in a railroad grade crossing accident on May 2, 1968, when his car, traveling north on Route 957, collided with an eastbound train of the defendant at one of two tracks at a crossing near Lottsville, Warren County, Pennsylvania. At the time of the accident, a driver approaching this crossing from the south on Route 957 would first pass a crossbuck warning sign on the right side of the road indicating "two sets of tracks," then cross a sidetrack and travel approximately 80 feet to the main line track of the defendant railroad, and finally, after crossing the main line track, pass a crossbuck warning sign on the left side of the road alerting southbound motorists of the railroad crossing. On the left side of Route 957 (going north), there was an inoperative feedmill close to the side tracks which obscured the northbound driver's vision to the west until he was within 60–65 feet of the main track, that is, until 15–20 feet after he had crossed the side track. At this point 60–65 feet south of the main track, the driver would have a clear view of a train on the main track, although he would not be able to see the actual main track at the crossing until he was 8–12 feet from it because of an 8% grade in the road and a slight "bump" at the point that Route 957 crossed the main track.

On the day of the accident, Sturdevant was driving at daybreak (approximately 6:10 A.M.) in foggy weather with his lights on. He had made this same northbound trip almost daily for the preceding two to three weeks.

While Sturdevant approached the crossing, an irregularly scheduled eastbound train of the defendant was proceeding on the main track at a speed of approximately 35 miles per hour, its headlight on, its horn sounding, and its bell operating. The engineer in this train saw the lights from Sturdevant's car when the train was about 900–1000 feet west of the crossing, but did not decrease the train's speed for some time because Sturdevant's car appeared to be slowing down as it approached the main track.[1] When the train was approximately 20–25 feet from the crossing, however, the engineer, fearing that a collision was possible, began to sound quick blasts on the train's horn and applied the emergency brakes. But the engineer testified that Sturdevant's car did not stop before crossing the main track and was struck by the train as it entered the main line track.

■ On this appeal, plaintiff contends that the district court erred in failing to charge the jury that defendant railroad could be liable for wilful and wanton negligence on the basis of either (a) its failure to construct a cross-buck sign or similar warning device between the sidetrack and the main track to warn northbound motorists of the presence of the main track, or (b) the failure of its engineer to take action to stop the train involved in the collision until it was approximately 25 feet west of the railroad crossing. These arguments are without merit. The district court, 319 F.Supp. 732, did not abuse its discretion in concluding that there was not sufficient evidence in the record from which the jury could have found the defendant guilty of wilful and wanton negligence.

■ The plaintiff also argues that the district court committed error in its

---

1. The charge instructed the jury that the defendant had the burden of proving that the deceased driver was negligent (A 15) and that plaintiff was entitled to the presumption that such deceased driver "took all the precautions that were necessary in every way to insure his own safety. The law presumes that he did stop, look and listen until evidence shows that he did not." (A 16). *See, e. g.,* Tomasek v. Monongahela RR., 427 Pa. 371, 375, 235 A.2d 359, 362 (1967).

charge to the jury concerning Pennsylvania's stop look and listen rule. We are convinced by an examination of the record (including the charge to the jury) and the cases cited by the parties [2] that the district court's charge on this issue was not error, since the charge, read as a whole, left it to the jury to decide whether Sturdevant should reasonably have stopped before crossing the main track.[3] The other arguments advanced by the plaintiff have been considered and rejected.

The judgment will be affirmed.

McLAUGHLIN, Circuit Judge (dissenting).

As I see it, the trial court erred in failing to charge the jury that the defendant railroad could be found guilty of wilful and wanton misconduct by its failure to place a crossbuck sign or other similar warning device between the two sets of tracks, thus alerting northbound traffic of the situation it was approaching. If such conduct were found by the jury it would remove the bar of contributory negligence from the plaintiff-appellant.

It was shown that there had been two accidents at this crossing within the last ten years and that appellee knew of them. The townline track was rarely if ever used in the two years preceding the accident. However, crossbuck signs which had previously been placed before the mainline track as a warning to northbound traffic had been removed and the present sign installed in front of the townline track. The latter sign advises motorists of two sets of track but the construction of the road is such that the mainline tracks are not visible until a person is almost on top of them—eight

---

2. The cases cited by the plaintiff indicate that the exception to the stop, look and listen rule developed by the Pennsylvania courts for the case where the motorist is proceeding through a railroad crossing after having stopped at the first track of the crossing, is premised upon the reasonableness of a further stop under the circumstances. See, e. g., Tomasek v. Monongahela RR., 427 Pa. 371, 235 A.2d 359 (1967); Riesberg v. Pittsburgh & Lake Erie RR., 407 Pa. 434, 180 A.2d 575 (1962); Baker v. Pennsylvania RR., 369 Pa. 413, 420–421, 85 A.2d 416 (1952); Muehlhof v. Reading Co., 309 Pa. 17, 20–21, 162 A.2d 827 (1932); Thomas v. Pennsylvania RR., 275 Pa. 579, 583, 119 A. 717 (1923). Plaintiff relies particularly on the *Riesberg* case, *supra*, in which the court noted that there was a distance of 52 feet between the northernmost track and the two southernmost tracks. In *Riesberg*, however, the court found that as a matter of law Mrs. Riesberg was guilty of contributory negligence because, by her own admission, she had not performed her duty to look and listen as she traveled between the northernmost track and the two southernmost tracks and crossed from the first to the second of the southernmost tracks; thus, the court was not required to decide whether she also had a duty to stop before the first southernmost track. Whether the court would have found the latter duty is at least unclear. See 407 Pa. at 437, 180 A.2d at 577, note*:

"A sketch attached to Riesbergs' brief confirms the statement at oral argument that this distance was 52 feet. The area between the northernmost set of tracks and the two southernmost sets of tracks is macadum covered. *For practical purposes it might be considered as two separate crossings.*" (Emphasis added.)

3. Judge Goodrich's observation in Smith v. Philadelphia Transp. Co., 173 F.2d 721, 725 (3d Cir. 1949)—a case which also involved the application of the Pennsylvania stop, look and listen rule—is pertinent to the circumstances of the instant case:

"It is clear . . . that the fundamental test for negligence is the failure to exercise reasonable care, not in the abstract, but under the particular circumstances. As lawsuits are brought and decided, rules for particular situations tend to become crystallized; courts hold that under an enumerated set of circumstances a person's conduct is or is not failure to exercise reasonable care. When the rule is thus crystallized, the standard of conduct has been set and is no longer open to finding by a jury. But it must be borne in mind always that the crystallization of general principle into specific rule is one for the special circumstances for which the rule is declared." (Footnote omitted.)

to twelve feet away. If one were to cross the townline tracks and become aware of a train coming on the mainline track, not being able to see that track there was no indication as to where he could safely stop. Under all the facts presented in this appeal the issue of wilful and wanton misconduct was a question for the jury. I would reverse the trial court judgment and remand the case for a new trial on the merits.