### PHILADELPHIA AND READING COAL AND IRON COMPANY *vs.* CITY OF BOSTON.

Suffolk.    March 21, 1912. — May 21, 1912.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DECOURCY, JJ.

*Damages,* In abolition of grade crossing.    *Evidence,* Relevancy and materiality, Presumptions and burden of proof.    *Deed,* Recording.    *Landlord and Tenant.*

At the trial of a petition for the assessment of damages alleged to have been suffered by a corporation engaged in receiving, storing and selling coal on a wharf by reason of the abolition of a grade crossing of a railroad and a highway, where the petitioner contends that the change of grade made less valuable the railroad facilities available for its use, it is proper to admit evidence offered by the respondent as to the number of tons of coal shipped by the petitioner by railroad during the three years preceding and the three years following the change of grade, if the presiding judge instructs the jury that the evidence is to be used not as bearing upon what business the petitioner did before and after the change, but solely as bearing upon the questions, what effect the change had upon the railroad facilities at the petitioner's command, and how it affected the market value of the petitioner's premises.

At the trial of a petition by a corporation which was in possession of land under a lease in writing for the assessment of damages alleged to have been suffered by reason of the abolition of a grade crossing of a railroad with a highway, an issue was, whether the petitioner had surrendered to the lessor a portion of the premises leased, and *it was held* that, upon conflicting evidence, that question properly was left to the jury.

At the trial of a petition against a city for the assessment of damages alleged to have been suffered by the abolition of a grade crossing of a railroad with a highway, where it appears by the petition that the petitioner's title to the land alleged to have been damaged was under a lease in writing for a term of twenty years dated before the institution of the proceedings for the abolition of the crossing, and a copy of the lease is annexed to the petition, and, although at the time of the filing of the petition the lease never had been recorded in accordance with R. L. c. 127, § 4, it was recorded before the completion of the trial, it is proper for the judge to refuse to rule that the lease was not valid as against the respondent and could not be used for the purpose of increasing damages.

At the trial of a petition for the assessment of damages alleged to have been suffered by reason of the abolition of a grade crossing of a railroad with a highway, where it appears that the petitioner is a corporation engaged in the coal business on a wharf which it held under a lease from one who owned a larger tract which included the wharf, and that the petitioner claimed damages because of loss of access to the wharf, it is proper for the judge to refuse to rule in substance that the assessment of damages should be "the same as if the owner of the fee was the only party interested," and that, if the portion of the entire

wharf property leased to the petitioner was of as much value as a part of the
lessor's property after the change of grade as it was before, then the jury
should find for the respondent even though the petitioner's leasehold estate had
been damaged.

MORTON, J.  This is a petition for the assessment of damages
alleged to have been caused to a leasehold estate belonging to the
petitioner by a change in the grade of Chelsea Bridge Avenue
so called.  Chelsea Bridge Avenue connects Charlestown and Chel-
sea.  The premises leased by the petitioner are a part of the Mystic
Docks so called.  The tracks of the Boston and Maine Railroad
crossed the avenue at grade to the docks.  The change of grade
consisted in elevating the avenue twenty-two feet above its former
level by means of a viaduct or bridge which permitted the free
passage of cars underneath it.  The premises occupied by the pe-
titioner abutted on the avenue and were leased by it from the
Boston and Maine Railroad for twenty years from May 1,
1890.  The lease was dated May 6, 1890.  The Boston and Maine
Railroad held under a lease for ninety-nine years from the
Boston and Lowell Railroad Corporation.  The petitioner's lease
was not recorded till December 14, 1900, after the petition in
this case was filed, and the respondent alleges that its existence
was not known to the public authorities either at the time when
the act, St. 1892, c. 374, under which the proceedings for a change
of grade were instituted was passed, or at the time when the
decree of the Superior Court authorizing the change was entered,
September 6, 1893.  The petitioner erected on the premises
leased by it an extensive plant for the reception, storage, sale and
shipment of coal.  The petitioner contended and introduced evi-
dence tending to show that in 1892 a portion of the premises leased
by it was surrendered to the lessor.  It was agreed that the rent
was reduced from $20,000 per annum to $15,000 per annum,
and that that was the amount paid from and after November 1,
1892.  Whether there was in fact a release of a part of the demised
premises to the lessor was controverted by the respondent.  The
effect of the release, if there was one, was to leave the petitioner
without any access to and from its premises and the highway
after the change in grade.  There was a verdict for the petitioner,
with the amount of which it is dissatisfied.  The case is here on
exceptions by both parties.

We take up first the exceptions of the petitioner. The first exception was to a ruling in regard to the auditor's report. This exception has not been pressed or argued, and we treat it as waived. The ruling was clearly right. *Wheeler* v. *Wheeler,* 116 Mass. 297.

The next exception was to permitting one of the petitioner's witnesses to testify on cross-examination that since 1895, when the change in grade took place, the price of coal by the Philadelphia and Reading, Delaware and Lackawanna, and Lehigh and Wilkes-barre coal companies at all the wharves in Boston had been uniform. The witness had testified on direct examination that it was a recognized part of the coal business in Boston for coal dealers to supply coal to customers by teams driven to the wharves and not belonging to the coal dealers. For the purpose of rebutting an inference which would or might be drawn from this evidence that this branch of the petitioner's business would be affected because such customers could not get to the petitioner's premises as readily as before, it was competent for the respondent to show that the petitioner's yard was so situated with reference to other yards, and the price of coal was such, that there was no inducement for such customers to go to the petitioner's yard. We think that the evidence was rightly admitted.

The next exception was to the admission of evidence offered by the respondent as to the number of tons of coal shipped by the petitioner over the Boston and Maine Railroad during the three years preceding the change of grade and during the three years following it. This evidence was admitted, as the presiding judge * instructed the jury, not as bearing upon what business the petitioner did before and after the change of grade, but solely as bearing upon the question whether the railroad facilities were better after the change of grade and in consequence of the change of grade; and whether the market value of the premises occupied by the petitioner, considered with reference to its usefulness for the business for which it was adapted, was affected by the change of grade. The jury were expressly told that they must not use the evidence except for this narrow purpose. We think that the evidence was clearly competent for the purpose for which it was thus admitted.

---

* *DeCourcy, J.*

The last exceptions by the petitioner were to the refusal of the presiding judge to give certain rulings that were requested to the effect that a portion of the premises leased to the petitioner had been surrendered by it to the lessor, and to the instructions given by the presiding judge to the effect that the question was one of fact for the jury to pass upon.  It appeared, or there was evidence tending to show that there were negotiations between the lessor and lessee, extending over a period of several months, in regard to a surrender of a part of the leased premises and a reduction of the rent.  Considerable correspondence relating to the matter was introduced by the petitioner, and Mr. McLeod, who was president of both corporations at the time, deposed that an oral agreement for a modification of the lease and a surrender to the Boston and Maine Railroad of a portion of the demised premises was made by him as president of the two companies, with the knowledge and approval of the directors of both companies; that the precise boundaries of the released portion were not determined at the time, but were left to be defined and staked out by the engineer of the petitioner, and that it was reported to him that that had been done; that in consideration of the surrender the rent was reduced to $15,000 per annum, which was the amount that was paid from and after November 1, 1892; and that after November 1, 1892, the Boston and Maine Railroad took and held possession of the portion of the demised premises that were thus surrendered.  There was also evidence tending to show that after the agreement referred to by Mr. McLeod, the superintendent of the Mystic Docks and an engineer of the Boston and Maine Railroad staked out a line showing the territory released, and it appeared that soon after November 1, 1892, the Boston and Maine Railroad extended its tracks through and erected a building upon that part of the premises alleged by the petitioner to have been released.  On the other hand "there was evidence," as the exceptions recite, "that the coal company continued to use the territory which was said to have been relinquished in exactly the same way and to the same extent that it did before."  It appeared in evidence and was found as a fact by the auditor that there was no record of any vote of the directors of the Boston and Maine Railroad or of the petitioning corporation authorizing or ratifying any change in the lease, although the directors of the Boston and Maine

Railroad had a clerk whose duty it was to enter all proceedings in the record. There was also in evidence a letter from the general manager of the Boston and Maine Railroad to its general auditor, in which it was stated that the rent paid by the petitioner was reduced from $20,000 per annum to $15,000 per annum, "in consideration of such changes as have been and are to be made at that point by laying additional tracks, etc. for the benefit of the Boston and Maine Railroad, and the lease by the Boston and Maine Railroad to the Philadelphia and Reading Coal Company is therefore amended so far as the rental to be paid by them is concerned as above." In addition the jury took a view and could judge from what they saw whether, as bearing on the question whether there was in fact a surrender, it was probable that a line would have been staked out where it was said to have been staked out. On this branch of the case the presiding judge instructed the jury in substance that the lessor and lessee could agree to cancel the lease as to a part of the leased premises, and that no written instrument was required; that if there was a giving up of a part by the coal company and an acceptance of it by the railroad company, the coal company ceased from that time to have any rights in the portion so surrendered; that to make the surrender valid the transaction would have to be authorized by the boards of directors of the two corporations, though it was not necessary that there should be a record in writing of their action, and that it was for the jury to say what weight, if any, as bearing on the question whether there was a surrender, should be given to the fact that there was no record of it; that if there was a surrender any use afterwards with the consent of the landowner of the part surrendered would not prevent the full operation of the surrender, and that the use after the surrender of the part surrendered was important only as bearing on the question whether there was in fact a surrender. We think that the instructions thus given were correct, and were all that the case called for on this branch of it.

The question whether there was or was not a surrender was one of fact for the jury under suitable instructions. The question whether the market value of the demised premises had been enhanced by the change of grade through the improved facilities claimed to have been afforded for the shipment of coal by rail was also for the jury. It was for them to say how much or how

little weight the testimony of those witnesses who testified in regard to that matter was entitled to and what inferences were to be drawn from it. The result is that the petitioner's exceptions must be overruled.

We pass to the respondent's exceptions. The first exception was to the refusal of the presiding judge to rule as requested that the lease under which the petitioner claims "being for twenty years and not being recorded in the registry of deeds is not valid against the City of Boston and cannot be used for the purpose of increasing damages. 'No contracts between the owners of different interests in the land can affect the right of the government to take the land for the public use, or oblige it to pay by way of compensation more' than it would have had to pay had the private contract not been in existence. This would be true even if the lease were for less than seven years." The sub-quotation is from *Burt* v. *Merchants' Ins. Co.* 115 Mass. 1, 15. The ruling requested is based on R. L. c. 127, § 4, which provides that a conveyance or a lease for more than seven years shall not be valid against any person except the grantor or lessor, his heirs and devisees and persons having actual notice of it, unless it is recorded. The object of the statute is to protect those taking title *bona fide* from a prior unrecorded deed or lease of which they have no notice. See *Earle* v. *Fiske,* 103 Mass. 491. Even if it be assumed, therefore, that the effect of the proceedings was to impose a servitude upon the demised premises, and to that extent to constitute a taking by the respondent, it would seem that, since the respondent does not take title from the Boston and Maine Railroad but by a right superior to and independent of the railroad company, the statute cannot apply. But, however that may be, it is settled that the deed or lease may be recorded after suit is begun and during the trial, (*Wolcott* v. *Winchester,* 15 Gray, 461, 467; *Howland* v. *Crocker,* 7 Allen, 153; *Anthony* v. *New York, Providence & Boston Railroad,* 162 Mass. 60,) and in this case the respondent had actual notice of the lease when the petition was filed, as there was a copy of the lease attached to the petition. The ruling asked for was rightly refused.

The remaining exception was to the refusal of the presiding judge to rule as requested in the second and third rulings asked for, that the assessment of damages should be "the same as if

the owner of the fee was the only party interested," and that if the portion of the entire wharf property belonging to the Boston and Maine Railroad leased to the petitioner was of as much value as a part of such property as it was before, then the jury should find for the respondent even though the petitioner's leasehold estate had been damaged. The rulings asked for assumed that if the Boston and Maine Railroad as the owner of the entire wharf property could recover no damages by reason of the change in grade, the petitioner as the owner and holder of a leasehold estate in a portion of the premises could recover none. This was clearly wrong as applied to the facts in this case. *Galeano* v. *Boston,* 195 Mass. 64, is directly to the contrary. See *Cornell-Andrews Smelting Co.* v. *Boston & Providence Railroad,* 202 Mass. 585, 598. We think that the rulings requested were rightly refused. It follows that the respondent's exceptions must also be overruled.

> *Petitioner's exceptions overruled; respondent's exceptions overruled.*

*R. M. Morse,* (*J. R. Lazenby* with him,) for the petitioner.

*J. J. Corbett & K. Adams,* for the respondent, submitted a brief.