Conley et al. *v.* Mervis, Appellant.

578

Argued October 13, 1936; reargued November 30, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Arthur M. Grossman,* with him *Harold H. Herwitt,* for appellant.

*N. H. Leventon,* with him *Jacob Shulgold,* for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, December 7, 1936:

Appellees, plaintiffs in the court below, were injured by a truck bearing dealer's license plates owned by appellant, the defendant. Defendant denied ownership of the truck and that the driver was his servant. It appeared that dealer's license plates No. 3X547 for 1931 were on the truck at the time of the accident, and defendant was called by plaintiffs as on cross-examination and asked whether he had owned the license plates. Having admitted ownership, his counsel proposed to examine him further in connection therewith: whether they had been loaned to anyone and whether the truck was driven by his servant in the scope of his employment. The court below refused to permit the examination, holding that these matters were part of defendant's case and could not be brought out under the guise of cross-examination. The defendant was forced to introduce this testimony as part of his own case. The issues having been submitted to the jury, it disagreed, and the refusal of defendant's request for judgment on the whole record caused this appeal.

It is conceded that the ownership of *dealer's license plates* appearing on a motor vehicle raises a rebuttable presumption that the truck belonged to the owner of the tags, and was driven by his agent or servant in the scope of employment; and this, without more, would require the submission of these questions to the jury, even though rebutted by the uncontradicted oral testimony of the dealer's witnesses: *Coates v. Commercial Credit Co.*, 310 Pa. 330; *Haring v. Connell*, 244 Pa. 439; *Prezel v. Spencer*, 99 Pa. Superior Ct. 404; *Theil v. Wolfe*, 77 Pa. Superior Ct. 312; *Herrington v. Hill*, 60 Pa. Superior Ct. 202; cf. *Orluske v. Nash Pbg. Motors Co.*, 286 Pa. 170. Defendant contends, however, that the court below should have permitted his cross-examination to embrace any matter touching upon or connected with the question of ownership of the tags, including all the inferences arising therefrom, and, if this had been allowed, the prima facie case arising from ownership would have been overcome by plaintiffs' own witness.

The scope of cross-examination in Pennsylvania is more restricted than that permitted in England, where it may embrace any matter material to the case irrespective of whether it relates to a point testified to by the witness in his examination in chief. See Wigmore on Evidence (2nd ed.), Sections 1885 to 1891. In this state it has been frequently stated that cross-examination must be strictly confined to matters touched upon in direct examination. This viewpoint originated in general statements which appear frequently in our cases discussing the permissible scope of cross-examination. "The cross-examination, as a general thing, is only regular when it is confined to testimony given by the witness in chief": *Helser v. McGrath*, 52 Pa. 531, 533. "It is certainly well settled in this state that cross-examination must be confined to the matters which have been stated in the examination in chief": *Jackson v. Litch*, 62 Pa. 451, 455. Expressions of a similar nature will be found in numerous other cases: see *Hopkinson v. Leeds*, 78

Pa. 396, 400; *Hughes v. Westmoreland Coal Co.*, 104 Pa. 207, 213; *Glenn v. Traction Co.*, 206 Pa. 135, 137. But this rigid rule has not been closely adhered to, and we have created well defined exceptions. The conception that these general pronouncements are an accurate statement of the rule is erroneous. It disregards the limitations imposed on its operation and ignores the fundamental reasons for the imposition of any restrictions on the scope of cross-examination.

The underlying reason for confining the scope of cross-examination is to promote order and method in the presentation of a case. Each party must have an opportunity to present his side of the case without the introduction of matters unrelated to his case in chief and not touched upon in his evidence. The Pennsylvania rule makes the issues as clear as possible to the jury by reducing to a minimum the possibility of the intermingling of matters purely defensive in character with the facts of a plaintiff's case. See Wigmore on Evidence (2nd ed.), Section 1887(b). The issues are clarified and confusion eliminated to the greatest possible extent by the separation of their respective contentions and the testimony produced in support thereof.

Ever since Chief Justice GIBSON, in *Ellmaker v. Buckley*, 16 S. & R. 71, 77 (1827), placed a limitation on the scope of cross-examination, this court has realized that it must retain a flexibility in its application; and where literal enforcement would only serve to defeat the ends of justice it must be relaxed. The result has been that, over this period of more than one hundred years, the effect of the general rule restricting the scope of cross-examination has been materially modified, so that our general rule can scarcely be said to accurately portray the present status of the law. The failure to give due weight to these modifications of the broad general rule misled the trial court in this case.

Nothing is better established than that cross-examination in many cases may reach beyond the facts elicited

on direct examination and embrace new matter. As early as 1848 Chief Justice GIBSON, the creator of the Pennsylvania rule, in *Bank v. Fordyce,* 9 Pa. 275, said at p. 277: "A party is entitled [on cross-examination] to bring out every circumstance relating to a fact which an adverse witness is called to prove." Or, as the rule is sometimes stated, it is competent on cross-examination to develop all circumstances within the witness' knowledge which qualify or destroy his direct testimony, although strictly speaking they constitute new matter and are part of the cross-examiner's own case: *Felski v. Zeidman,* 281 Pa. 419, 422; *Quigley v. Thompson,* 211 Pa. 107, 109; *Jackson v. Litch,* supra. In *Smith v. Traction Co.,* 202 Pa. 54, 57, quoted with approval in the *Felski* case, this court, after stating the broad principle that cross-examination should be confined to matters testified to in chief and cannot be used to bring out new matter in defense, said: "But it is equally true that, when cross-examination is germane to what is inquired into in chief, or tends to elicit facts which, as in this case, the plaintiff ought to have brought out as part of the case, and which the court and jury should have known from him and his witnesses, the defendant should be allowed to develop what is withheld intentionally or otherwise." Therefore it may be regarded as definitely settled that cross-examination may embrace any matter germane to the direct examination, qualifying or destroying it, or tending to develop facts which have been improperly suppressed or ignored by the plaintiff. It is equally established that where a plaintiff offers himself as a witness, he may be cross-examined as to anything relevant provided it is not purely a matter of defense, on the theory he should not withhold matters materially affecting his rights *(Greenfield v. Philadelphia,* 282 Pa. 344; *Albrecht v. Erie City,* 265 Pa. 453) ; and facts may be elicited on cross-examination which are part of the res gestæ, even though in a sense they constitute new matter: *Felski v. Zeidman,* supra. Finally, the decision as

to the proper scope of cross-examination rests within the trial court's sound discretionary power, and its failure to properly limit it is not grounds for reversal in the absence of apparent injury as a result of the error: *Glenn v. Traction Co.,* supra; *Thomas & Sons v. Loose, Seaman & Co.,* 114 Pa. 35, 47; *Hughes v. Westmoreland Coal Co.,* supra.

The burden rested upon plaintiffs to prove that the truck driver was defendant's servant and that he was engaged in his master's business at the time of the accident: *Readshaw v. Montgomery,* 313 Pa. 206, 208, and authorities cited therein. Defendant's testimony, on examination by plaintiffs, admitting ownership of the license plates, had much greater significance than the fact of ownership would seem to indicate and enabled them to meet this burden. The real purpose of a question may reach far beyond its apparent import: cf. *Kirschman v. Pitt Publishing Co.,* 318 Pa. 570, 575. Under our decisions with respect to dealer's license plates, this admission had embodied in it not only the fact of ownership but inferences sufficient to take the case to the jury: namely, that the motor vehicle was owned by defendant; that the driver was his servant; and that the vehicle was being driven at the time on his business. It was not the fact of ownership which was harmful but the implications arising from it. Defendant proposed to cross-examine the witness as to the fact of ownership and *the inferences that flowed from it,* and, had he been permitted to do so, plaintiffs' own testimony would have deprived them of the benefit of the presumption. It would have shown not only that he did not own the truck and that the driver had never been in his employ, but that the plates were taken from his place of business without his knowledge or consent or that of any one authorized to grant consent. This uncontradicted evidence would have rebutted the presumption in plaintiffs' case by their own witness. The trial court refused to permit this examination and compelled defendant to produce this evi-

dence as part of his own case, thereby requiring submission of the issue to the jury.

The testimony given by defendant corresponded exactly with what his counsel had proposed to bring out on cross-examination. It revealed that the license plates were taken from his garage without his permission and given to one Samuels, an owner or operator of the Star Produce Company which owned the delivery truck, for use on the truck. Defendant had no interest in the produce company or the truck, and the driver of the truck had never been employed by him. The court below in refusing to permit this testimony on cross-examination proceeded upon the theory that it must be strictly and literally confined to the matter actually testified to in chief. It held that as defendant's testimony had been limited to the question of *ownership of the license plates* on the truck at the time of the accident, his examination by his own counsel could not extend beyond this precise matter.

This strict limitation entirely ignored the purpose for which defendant's ownership of the license tags was introduced in evidence and its legal effect as proof of the existence of a master and servant relationship. This evidence was produced exclusively for the purpose of giving rise to a presumption of such relationship. The inferences flowing therefrom enabled plaintiffs to make out a prima facie case, and their probative value was the impelling and vital reason for securing from defendant an admission of ownership of the license plates. The fact of ownership standing alone and stripped of these inferences meant nothing to their case. The inferences are the damaging part of this testimony. Here is a patent case where cross-examination would be of little value if restricted to the actual facts elicited on direct examination. One of the purposes of cross-examination is to enable the jury to ascertain the truth of relevant facts deposed by a witness on direct examination and to properly guide them in drawing material inferences there-

from. If cross-examination is to be of any service it must not be limited to the precise facts brought out on direct examination but must extend to all inferences, deductions or conclusions which may be drawn therefrom: see *Haun v. McCabe,* 308 Pa. 431, 438; *Wilson v. Wagar,* 26 Mich. 452; *Blake v. Powell,* 26 Kan. 320; *Kyper v. Sheaffer,* 42 Pa. Superior Ct. 277, 288; *Philadelphia & Reading Coal & Iron Co. v. City of Boston,* 211 Mass. 526, 98 N. E. 1067; *Blue v. Portland Ry. Light & Power Co.,* 60 Ore. 122, 117 Pac. 1094; *In re Purcell's Estate,* 164 Cal. 300, 128 Pac. 932; Wigmore on Evidence (2nd ed.), Section 1889. In *Haun v. McCabe,* supra, where the defendant sought to create an erroneous impression by securing an answer from his witness which gave rise to an inference favoring him if additional facts were not brought to light to explain it away, this court, speaking through Mr. Justice Drew, said at p. 438, "Standing alone, the answer to the question asked by defendant's counsel would have left the jury with an erroneous and distorted view of plaintiff's testimony at the inquest. It was entirely proper to correct such a wrong impression on cross-examination by eliciting facts, germane to what was inquired into in chief, which qualified or destroyed the effect of the testimony on direct examination: [authorities cited]." In other words, the testimony in chief, for the purpose of determining the proper scope of cross-examination, consists not only of the bare facts brought out but in addition includes all inferences or deductions which may be made from them.

In the case at bar the court below should have permitted defendant's counsel to develop any facts pertaining to the inferences based upon ownership of the license plates or tending to qualify or destroy them. Plaintiffs cannot disclaim part of defendant's testimony simply on the ground it was unfavorable to them. Defendant was entitled to explain away the adverse effects of the facts elicited from him by plaintiffs' counsel, which necessarily include all possible relevant inferences, and his

explanation bound them if uncontradicted. Where a party calls a person adversely interested as if under cross-examination, he is bound by the testimony if uncontradicted: *Readshaw v. Montgomery,* supra, and authorities cited therein. Consequently defendant's explanation of his ownership and its inferences must be considered as part of plaintiffs' testimony and binding upon them.

Aside from the fact that the proposed examination of defendant by his counsel covered inferences flowing from his direct examination, there is another reason why it should have been permitted. As previously mentioned, the burden rested upon plaintiffs to establish affirmatively that the truck driver was defendant's servant and acting within his scope of employment. Having chosen to place defendant on the witness stand and examine him as to facts bearing on this question, plaintiffs were not at liberty to bring out only those matters favorable to them and ignore or otherwise suppress facts of an adverse and harmful character bearing a direct relation to it. To permit the concealment or suppression of facts which are germane or related to an issue touched upon in direct examination and are not purely matters of defense would be to bestow upon a plaintiff an unfair advantage and enable him to have the case submitted to the jury, in spite of the fact his own witnesses possessed knowledge of facts which would make it impossible for him to make out a prima facie case if these facts appeared on the record as part of his own case. This course would be simply juggling with judicial procedure. Any limitation on the scope of cross-examination opening the way for such an absurd situation would defeat one of the vital reasons for its existence. That the testimony on direct examination does not go sufficiently far to prove the ultimate fact in issue is immaterial. It is enough if it tends to establish it. Where testimony has been adduced relevant to a particular issue involved, cross-examination may embrace any circumstances pertaining thereto, though prej-

udicial to plaintiff's case and reaching beyond the direct testimony. The chief reason for limiting cross-examination is to promote order and clarity in the presentation of a case and prevent confusion, but there are circumstances where inculpatory evidence may appear in one's own case. To hold otherwise would be to give a party an opportunity to suppress and hide facts, intentionally or otherwise, which, though not affirmative defenses, would bar his right to recover. The Pennsylvania limitations on cross-examination were never designed to provide a cloak for the concealment of material facts pertaining to issues touched upon in direct examination.

The refusal to permit defendant's counsel to examine him regarding a master and servant relationship worked a serious injury constituting an abuse of the trial court's discretionary power. Where a party has been improperly denied the right to cross-examine a witness, and the testimony (which should have been admitted as cross-examination) appears as part of his own case, on appeal it will be considered as though given on cross-examination: See *Hughes v. Westmoreland Coal Co.*, supra, at p. 213; *Smith v. Standard Steel Car Co.*, 262 Pa. 550, 557. While it is true that where plaintiff's case rests upon a presumption he is entitled to have it submitted to the jury though rebutted by defendant's uncontradicted parol evidence *(Coates v. Commercial Credit Co.*, supra), where the presumption is rebutted by plaintiff's own evidence, it disappears and a nonsuit will be granted: *Readshaw v. Montgomery*, supra; *Felski v. Zeidman*, supra. Plaintiffs failed to carry the burden of proof and judgment should have been entered for defendant on the whole record.

The only remaining matter to be considered is appellees' motion to quash on the ground that as the jury failed to agree and the trial court did not enter judgment in favor of either party there is no right to appeal. They cite in support of this contention the Act of April 20, 1911, P. L. 70, Sec. 1, as interpreted by Justice MESTRE-

ZAT in *Lipsky v. Stolzer*, 236 Pa. 151. However, the act was not intended to be productive of unnecessary or unusual litigation. This case has been tried twice, and on the first occasion a new trial was granted on the ground the verdict for plaintiffs was against the weight of evidence. If there was conflicting evidence necessitating the determination of question of fact by a jury, undoubtedly the rule of the *Lipsky* case would require that the appeal be quashed. But as we have indicated, if the court below had properly decided the controverted legal question and allowed the cross-examination, the conflict in evidence would have disappeared, and plaintiffs' own uncontradicted testimony would have entitled defendant to a judgment on the whole record. We consider the record in this light and here enter the judgment which the court below should have entered.

Order of the court below reversed and it is ordered that judgment be entered for defendant with costs.