Jesse Q. CASSO,
v.
THE PENNSYLVANIA RAILROAD COMPANY, a corporation.
Civ. A. No. 10776.

United States District Court,
W. D. Pennsylvania.
July 28, 1954.

---

Evans, Ivory & Evans, Pittsburgh, Pa., for plaintiff.

Dalzell, Pringle, Bredin & Martin, Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

The jury gave Jesse Q. Casso, the plaintiff, a verdict in the sum of $72,000. Plaintiff was a track worker in the employ of defendant. Shortly after 1:00 a. m., on the morning of June 26, 1952, plaintiff was struck by the leading end of a train consisting of a diesel engine pushing six box cars and a caboose, which was in front. Some eighteen camp or bunk cars had been located on a siding by defendant near New Brighton, Pennsylvania, as living quarters for a number of employees engaged as track workers. The tracks in the area ran generally east and west. The bunk cars were on a siding parallel to another switching track over which the train was being operated when plaintiff was injured.

At the close of the evidence, defendant presented a Motion for a directed verdict, assigning two basic reasons: first, that plaintiff was injured on a mission of his own, which was unrelated to and unconnected with his employment; and, second, that plaintiff having procured his employment by fraud was not entitled to benefits under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. As a third reason, defendant asserted that, as plaintiff sued under the Federal Employers' Liability Act, he cannot recover in this action which was brought solely under that statute.

Defendant's Motions were not only refused, but the foregoing propositions were taken from the jury, leaving the issue of liability and damages to the jury.

Defendant now moves for judgment notwithstanding the verdict, claiming that it was entitled to a ruling as a matter of law that plaintiff was not in the course of his employment when injured and that he is not entitled to the benefits of the Act because of fraud in his employment.

■ Under the evidence presented, it is my opinion that fair-minded men cannot differ as to whether plaintiff was in the course of his employment at the time of his injury. The Federal Employers' Liability Act requires liberal interpretation to accomplish the purposes intended. The facts as they relate to whether plaintiff was in the scope of his employment are clear and undisputed. Viewing the evidence in the light most favorable to the defendant, it shows: plaintiff and the other track employees were subject to twenty-four hour call to duty. They received their lodging in the cars free of charge, but paid board covering their meals to a concern who had contracted for such services with defendant. The day before the accident, plaintiff had a day off. The evening before he had been in town with other employees on their own affairs. There was no access to the camp car area by public highway or sidewalk, as the camp cars were situated on property of defendant. Plaintiff and other employees walked to and from the bunk car area when on their own affairs, sometimes between the rails of the track on which the switching train was operated or on a path between the two sidings, and at other times on the unimproved roadway which entered the area from the east. Plaintiff had left his

companions in town for the stated purpose of returning to his bunk car to retire for the night. He walked towards the line of bunk cars from the 10th Street Bridge. He had passed at least one and perhaps two of the cars when he was struck by the caboose of the train. At least two trainmen were standing on the caboose platform but neither saw plaintiff until the moment he was struck. The train was moving from three to four miles per hour when it struck plaintiff and it came to a stop at the third to fourth car at the west end of the camp car line. Plaintiff was struck when within twenty-five to thirty feet from the bunk car in which he slept. Under the foregoing facts, I held, as a matter of law, that plaintiff was within the scope of his employment when injured.

Defendant says that it was a question for the jury as to whether plaintiff was in the scope of his employment when he received his injuries; especially does defendant contend that it was for the jury as to whether plaintiff returned from town for the purpose of going to work the next day. In this connection, it should be kept in mind that the fact that plaintiff was struck while within the line of the camp cars, the fact that plaintiff's place of residence was in the bunk car provided by defendant, and the fact that plaintiff was on twenty-four hour duty, all were undisputed. It is true that plaintiff testified that he was returning to go to sleep to ready himself for his next day's work. However, I do not regard the matter of plaintiff's intention as being an issue for the jury. I regard plaintiff as being within the scope of his employment as he was subject to being called for work at any moment. Also, it is not necessary that plaintiff should actually reach the steps of the car in which he lived to hold that he had returned to the place of his abode. It is true that the camp car area cannot be exactly defined, yet plaintiff had arrived back at the accommodations provided by the defendant, when injured. See Mostyn v. Delaware, L. & W. R. Co., 2 Cir., 160 F.

2d 15; Chicago, M. St. P. & P. R. Co. v. Kane, 9 Cir., 33 F.2d 866.

On the second point in defendant's motion, that is on the question as to whether there was fraud in plaintiff's employment, defendant calls the Court's attention to the Supreme Court decision in Minneapolis, St. P. & S. S. M. R. Co. v. Rock, 279 U.S. 410, 49 S. Ct. 363, 73 L.Ed. 766. That case, of course, sets forth controlling principles of law. Plaintiff here had an artificial right eye. The question is whether plaintiff obtained his employment and held it through fraudulent means. What were the conditions under which plaintiff in this case entered the employ of the defendant? The evidence on this point is clear and uncontradicted. A group of men, including plaintiff, were rounded up by an employment agency in Detroit. There some form of an application for employment was filled in. The men were then given a physical examination by defendant's physician. It is not clear whether the same day or the next day plaintiff signed a more detailed employment application in which answers to various questions were set down by someone, but this document was, in fact, signed by plaintiff. There is no evidence whatsoever that the application in which plaintiff's physical condition was not accurately set forth had anything whatsoever to do with the inception of plaintiff's employment or his continuance therein. The examining doctor certified plaintiff's vision as 20–30 in both eyes. He certified that plaintiff passed a reading test for both eyes without glasses and also that plaintiff was approved for sight, color senses and hearing, and for employment. The report was signed by Dr. I. R. Browning, who died April 29, 1951. The examination was had on April 11, 1950. Prior to the accident, plaintiff was in defendant's employ for a matter of over two years. When plaintiff was on the witness stand, a mere glance revealed to me that there was some defect in plaintiff's right eye. An examination by a

physician should certainly have revealed the artificial eye. Certainly under the circumstances shown, the facts are far from those shown in the Rock case. The mere fact that the plaintiff had an artificial eye does not show fraud in securing employment. When a physical defect such as plaintiff possessed is visually apparent and when plaintiff was permitted to continue in his employment for over two years in daily association with other employees and supervisory personnel, the mere fact of an incorrect statement in the application should not deprive plaintiff of a ruling that his employment was not retained or colored with fraud. There is no showing whatsoever in the present case that the examining physician was in any way deceived or that plaintiff in any way attempted to deceive the examining doctor. The evidence was that defendant immediately rushed plaintiff and other applicants for employment to a physician for a physical examination. Defendant's own physician approved plaintiff's physical condition for employment. As has been stated, plaintiff's physical defect was apparent to a casual observer. Any carelessness in hiring a one-eyed man as shown by the evidence in this case, must be contributed to the defendant's physician. Defendant's counsel says that the Court erred in the quantum of proof necessary to prove fraud. Defendant's counsel also says that it need only be proved by a preponderance of the evidence rather than by clear and convincing proof. Regardless of the quantum, however, I stated on the record at the time the Motion was made on this phase of the case that there was merely a scintilla of proof on the question of fraud and in view of the evidence on this point, I feel that the Court's position at the trial was correct and it is, therefore, still my opinion that there was insufficient evidence of fraud to go to the jury on this question.

My ruling on the two basic propositions discussed, which are the bases for the Motions for judgment for the defendant, notwithstanding the verdict, is in line with the principles mentioned in Lovas v. General Motors, 6 Cir., 212 F.2d 805, at page 807, where the Court says:

"Certain principles are well settled under both state and federal law. In every case, before the evidence is left to the jury, there is a preliminary question for the judge whether there is any substantial evidence upon which a jury can properly proceed to find a verdict for the plaintiff, upon whom the burden of proof is imposed. A mere scintilla of evidence, or evidence of no probative value, is not enough to require the submission of an issue to the jury."

The ruling of the Court on these two points will not be disturbed.

Defendant's Motion for a new trial contains fourteen numbered paragraphs, assigning various reasons why a new trial should be granted. The reasons assigned fall into six general categories, as follows:

### First. Use of Camp Car Area

■ Defendant claims error in permitting plaintiff's witnesses to testify that it was usual for men residing in the camp cars to use the railroad siding and the track where the accident occurred as longitudinal walkways during their off-duty hours. This evidence was relevant on the question of notice, both on the question of defendant's negligence and plaintiff's contributory negligence. The custom and habit of the men walking in and about the camp car area certainly went to the question as to whether defendant had notice that plaintiff and others might be using the railroad sidings as walkways. In this connection, the evidence was that the siding in question was but little used and at irregular times. Defendant had issued no instructions as to pathways which the men were to use. The jury, in consideration of negligence, had a right to know whether Casso was walking at the place where the men residing at the camp cars customarily and habit-

ually walked in going from Beaver Falls to the camp. It is pointed out in connection with this evidence, that the testimony of at least three witnesses as well as the plaintiff, was received without objection on the part of defendant's counsel.

The eleventh and twelfth reasons assigned in the Motion for a new trial relate to the question as to whether plaintiff was within the scope of his employment when injured, which have been discussed.

### Second. Fraud in Employment

■ In Defendant's fifth reason, it is claimed that the introduction into evidence of Interrogatory No. 15 and its Answer was prejudicial and that the Answer was magnified by its use in the closing address to the jury of plaintiff's counsel. In this Interrogatory, plaintiff inquired "What physical defects or defects of vision or hearing did plaintiff have as of the date of the physical examination made of him by defendant next prior to the accident herein involved." The Answer of the defendant is "Right eye is artificial." On this point defendant's counsel states that he objected to the introduction of the Interrogatory and Answer into evidence. However, the stated reason for the objection was that "I object to that offer as being only a partial offer of the information Mr. Evans has secured by the answers to interrogatories, relating to the same matter." Defendant's counsel then called the Court's attention to the seventh Supplemental Interrogatory and its Answer, whereupon counsel was instructed by the Court that if there was anything further on that subject, counsel could bring it out when his turn came. In defendant's own case, the subject of the inquiry, Supplemental Interrogatory No. 7, that is, the certificate of the examining doctor, was placed in evidence. This showed the result of the examination and the name and address of the doctor who made the examination and that plaintiff was approved for employment by defendant's physician. The Court fails to see any impropriety in the introduction of this Interrogatory and Answer into evidence. In connection with the Answer to this Interrogatory, defendant says that plaintiff's attorney made unfair comment to the jury in his summation. Of course, the very nature of the factual situation created an area where counsel, in a summation for plaintiff, could elaborate with considerable latitude. Defendant's physician had not discovered plaintiff's glass eye and had certified plaintiff as having normal vision in his right eye and approved him. From those facts, plaintiff's counsel argued that defendant had knowledge of the artificial eye at the time of the employment. It must be remembered, however, that defendant had charged fraud in employment and had asserted that plaintiff deceived it. There was no evidence, however, that plaintiff deceived the doctor into certifying that plaintiff had normal vision in both eyes. The matter of plaintiff signing an application for employment which contained misstatements as to his physical condition was left to the jury as possibly affecting plaintiff's credibility generally. The so-called unfairness in the argument, or whether this Answer was unduly magnified by plaintiff's attorney in his summation, must be considered in connection with the defense raised, that is, the defendant openly asserted fraud on the part of plaintiff. Under the circumstances, the argument of plaintiff's counsel does not appear to have been prejudicial, due to the fact that plaintiff had some apparent defect in his right eye which even a casual observer could have discovered.

■ Also, in this connection, defendant assigns as error the refusal of the Court to permit defendant's counsel to inquire of plaintiff on cross-examination as to whether the plaintiff knew at the time of his employment by defendant that he would not have been hired had he disclosed the fact that he had only one eye. Counsel for plaintiff objected to the question on the ground that it involved a statement of fact on which

there was no evidence at that point, and the objection was sustained. Plaintiff's counsel had already examined plaintiff at considerable length with regard to his artificial eye and with regard to his examination by defendant's physician, and whether he worked for other railroads between the time he lost his eye and the time he went to work for the defendant. Plaintiff had stated that he had not told the doctor of his eye and that the doctor had not asked him about his eyes, except that the doctor inquired as to whether he could see and plaintiff replied that he could. The question was excluded as it was felt that it related to an affirmative defense asserted by defendant, i. e., fraud in violating defendant's rules of employment, which rules had not yet been established. If the Court erred in this respect, then the error was not substantial as defendant later put in its defense that it would not have hired plaintiff had defendant known that he had a glass eye. Defendant's counsel has cited Conley v. Mervis, 324 Pa. 577, 188 A. 350, 108 A.L.R. 160, on the scope of cross-examination. That decision does not appear to be inconsistent with the ruling of the Court which was made at a particular point in the trial of the case. There is a more recent decision of the Supreme Court of Pennsylvania on this question, which minimizes the holding in the Conley case, that is, the case of Kline v. Kachmar, 360 Pa. 396, at page 402, 61 A.2d 825.

The tenth and thirteenth reasons assigned for a new trial relate again to the question of the inception of the employment which has been fully discussed. In the fourteenth reason, defendant says that the Court erred in holding that the application for employment had no connection with the employment of the plaintiff by the defendant. I do not find any such ruling in the record. The application was admitted in evidence for the purpose of affecting plaintiff's credibility.

Third. On Evidence as to Plaintiff Being a Payday Drunk

Defendant's counsel, in the trial of the case, attempted to show, not only that plaintiff was intoxicated on the night in question, but that he was an habitual payday drunk. On this point, defendant's counsel says in his brief:

"Another matter incidental to the second defense is set forth in the eighth reason for a new trial to the effect that the Court erred in refusing the defendant's offer of proof that the plaintiff was a payday drunk who did not work for several days after each payday."

With reference to this question, at the trial I took the position that if defendant could show by substantial evidence that plaintiff was actually under the influence of intoxicating liquor at the time of the accident, then evidence would be permitted as to plaintiff being off work after each payday and at other times, in corroboration of defendant's evidence that plaintiff was intoxicated at the time of the injuries. However, defendant's counsel proceeded in the reverse, that is, he attempted to show intoxication on a particular occasion by attempting to show intemperate habits. See Henry on Pennsylvania Evidence, Vol. 1, page 69. Further, defendant was able to offer but very little evidence to substantiate his theory that plaintiff was intoxicated when injured. This was one of the openly asserted defenses. However, but one witness testified directly that plaintiff was intoxicated the evening before he was injured. The weight of the evidence was to the contrary. Though the question of intoxication was left to the jury as relating to contributory negligence and credibility, it is believed that there was no error in the way this question was ruled upon during the trial.

Fourth. Defendant Asserts Error on the Part of the Court in Refusing to Permit Defendant to Offer in Evidence a Statement Made by Plaintiff's Counsel During the Pre-Trial.

At the pre-trial, Mr. Evans for plaintiff inquired of defendant's counsel

as to the present addresses of three possible witnesses. He mentioned that the addresses had been previously furnished by defendant as being San Antonio, but inquired as to their present whereabouts and then inquired as to the whereabouts of one Cleo McCoy, an employe of defendant. It is to be noted that Mr. Evans at no time mentioned McCoy as being a possible witness. At the pretrial, defendant's counsel was unable to furnish any information as to the present whereabouts of employe McCoy. The pre-trial was held February 23, 1954. The trial commenced April 14, 1954. Defendant offered the witness McCoy on its side. During cross-examination it was brought out that defendant had taken a statement from this witness some three weeks prior to trial. Defendant's counsel offered the pre-trial record, being the statement made by Mr. Evans on this question, for the purpose stated by Mr. Martin to be, "The purpose is obviously to explain why we didn't have a statement from Mr. McCoy at any time prior, and how we got his name as a possible witness." It is noted that Mr. Evans, at the pretrial, did not state that McCoy would be a witness or that he had any knowledge of material facts. Plaintiff's objection as to this matter was sustained, but defense counsel was informed that he was not restricted in his proof and that he might prove the fact as to when defendant became aware that McCoy knew anything concerning the accident. Defense counsel stated in discussion of the matter with the Court, that, "we had no idea McCoy knew anything about it until Mr. Evans told us." The record fails to show that plaintiff's counsel indicated that McCoy had any knowledge as to the accident. During the summation, plaintiff's counsel referred to McCoy as being an employe of the railroad and that defendant did not approach him or talk to him for almost two years after the accident, and then they brought him in, in an attempt to show that plaintiff was intoxicated. It appears to the Court that the jury understood the situation and that a fair interpretation of the summation on this point was simply an attempt to impress upon the jury the fact that defendant was using one of its own employes as a witness as to a vital point in the case and under the evidence, such an argument was not prejudicial to defendant and that there was no error in the ruling made.

Fifth. As to the Closing Argument of Plaintiff's Counsel Being Improper and Prejudicial.

At the close of plaintiff's summation to the jury, defendant's counsel requested a side bar conference. He then cited to the Court five specific instances of improper argument in the summation. One related to the witness, Mr. Deck; another related to interrogatory No. 15, which has been mentioned; and another point related to a matter of railroad benefits and the last related to pain and suffering and inconvenience; and also Mr. Martin objected to a reference to a recent study in medicine on the loss of an arm. At the start of the side bar, defense counsel said:

"In the course of the closing address, Mr. Evans repeatedly argued what he said was lack of fairness on the part of the defense, one of the items being that Mr. Deck—and as best I could write it down, his words were—'last August, when his deposition was taken, couldn't remember anything about the train or about the lights.' Now, that is an argument which is completely unsupported by the evidence and Mr. Evans knows it. It is improper argument."

In discussing this matter, it is pointed out that the case was hard fought, but in the opinion of the Court, fairly tried by both counsel. The trial record indicates that there were some thirty-six objections to items offered in evidence, yet the verbal exchanges between counsel were polite and courteous. The case was tried in a generally calm and quiet trial atmosphere.

Further, in considering this matter, the Court has in mind the principles as to what is proper and correct in a summation as set forth in the discussions in New York Central Railroad Co. v. Johnson, 279 U.S. 310, 49 S.Ct. 300, 73 L.Ed. 706; Missouri-K.-T. R. Co. of Texas v. Ridgway, 8 Cir., 191 F.2d 363, 29 A.L.R.2d 984; Beck v. Wings Field, Inc., 3 Cir., 122 F.2d 114; London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325; and the very recent case in this Circuit, Robinson v. Pennsylvania Railroad Co., 214 F.2d 798, in which the opinion of Judge Staley was filed July 14, 1954.

Defendant here asserts that the verdict was the result of passion and prejudice against defendant, aroused by plaintiff's improper remarks in his summation. In the summation, which required thirty-seven pages to print in the record, defense counsel points to some six instances of improper remarks. Generally the statements which are objected to are those in which plaintiff's attorney used the words or phrases, "a complete lack of fairness," "is that being fair," "is that what we want," "was that an act of fairness," and in one instance only, "is that being honest."

As to whether a new trial should be granted because of improper arguments of defendant's counsel, I have in mind that in the trial of cases to a jury in Federal Courts, the arguments of counsel must be confined to the issues of the case, the applicable law, pertinent evidence and such legitimate inferences as may properly be drawn therefrom. See London Guarantee & Accident Co. v. Woelfle, supra. In the case before me, there were no such "repeated accusations against opposing counsel and client and repeated references to matters entirely foreign to the real issues before the jury", as Judge Staley mentions in the Robinson case [214 F.2d 801]. If the summation was in some respects improper, the impropriety was a mere isolated lapse, which in the opinion of the Court amounted to very little when viewed and compared with the evidence as a whole. One dictionary definition of the word "fairness" is "candor in argument." This Court believes that the verdict of the jury in this case was based on the weight of the evidence on the question of negligence, which was clear, rather than upon the argument of plaintiff's counsel to the jury. The jury made special findings on defendant's negligence and plaintiff's contributory negligence. The jury was cautioned that plaintiff was entitled "to a fair trial on all the points that he has raised before you" and that the defendant, "the Pennsylvania Railroad Company, a corporation, is entitled to the same fair and impartial consideration of its side of the case." In weighing the evidence on the motion for a new trial, it is believed that the overwhelming weight of the evidence as to liability favors plaintiff and is against defendant.

Sixth. As to the Amount of the Verdict.

However, under the evidence, it is believed that the verdict is excessive. Plaintiff was born in the year 1898. His life expectancy was shown to be 19.19 years. His background and training was such that he must be classed as a common laborer and considering his age and training and the evidence relating to his earnings, $2,500 a year is the maximum which plaintiff could earn in the future. In all likelihood his earnings would diminish as he grew older. However, he was disabled as a result of the injuries and unquestionably at present he is a derelict on the labor market. Under the evidence, the present worth of his future earnings from the time of the trial onward could not exceed $30,000. Having in mind that he would be entitled to $5,000 for the two years intervening from the time he was hurt until the time of the trial, his maximum recovery for earnings is not in excess of $35,000. This sum from the amount of the verdict leaves $37,000 for physical injuries, expenses, pain and suffering, et cetera. The medical testimony in the case came from

reliable witnesses. There is no doubt but what plaintiff received severe and permanent injuries and suffered considerable pain. It is believed, however, that $18,000 is ample with respect to this item of damage. An order will be entered requiring plaintiff to remit so much of the verdict as is in excess of $53,000, otherwise a new trial will be granted.