*Western District*

**JOE MARRS, d-b-a
MARRS AIRCRAFT**

**v.**

**LEON BARBEAU**

*Present:* Riley, P.J., Hobson and Alberti, JJ.

Case tried to *Noonan, J.,* in the District Court of Springfield.

*Alberti, J.* This is an action of tort for conversion in which the plaintiff seeks to recover damages for the alleged conversion by the defendant, who is and at all times material hereto was a Deputy Sheriff for the said County of Hampden, of an airplane which is identified as a Lockheed (10B), Serial No. 1309 CAA, Registration Number N14961. The writ in said action is dated October 15, 1954 and was returnable to the District Court of Springfield on October 30, 1954. The ad damnum as amended is $15,000.00.

The declaration reads:

"And the plaintiff says that the defendant converted to his own use One Lockheed Aircraft 10B, Serial No. 1039, CAA Registration No. N14961, the property of the plaintiff."

The answer consisted of a general denial, denial of ownership in the plaintiff of the

aircraft mentioned in the declaration, and an allegation that the defendant attached the aircraft solely in his capacity as a Deputy Sheriff by virtue of a Writ issued from the District Court of Springfield, held the same under the said attachment, and thereafter sold the same in accordance with applicable statutory law.

The parties stipulated and agreed in writing, in lieu of the production of testimony or documentary evidence thereof, various facts in the Report set out in full and numbered 1 through 10 therein.

The facts stipulated, together with other testimony recited in the Report, warranted the following special findings of fact.

"The aircraft which is the subject matter of this action is identified as Lockheed 10B, Serial No. 1309, CAA Registration No. 14961.

"Prior to January 7 or 8, 1953 full legal and beneficial title to said aircraft was in Springfield Feeder Lines, Inc., a Massachusetts corporation and said aircraft was registered and the title recorded in the name of that corporation as owner with the Recordation Branch of the Civil Aeronautics Administration, Washington, D.C.

"On January 9, 1953 the Defendant, a deputy sheriff in and for the County of Hampden, Commonwealth of Massachusetts, attached said aircraft on a Capias Writ dated January 9, 1953 returnable to this Court January 31, 1953 in an action of law brought

by Hawthorne Management Company, Inc. against Alfred H. Rudich.

"The aircraft, which because. of its condition, could not be flown, was chained to the ground by the Defendant and subsequently removed to a hanger.

"The Defendant did not record this attachment with the Civil Aeronautics Administration.

"The attachment was made in accordance with the laws of the Commonwealth of Massachusetts.

"On January 6, 7 or 8 Alfred A. Rudich purchased the aircraft from Springfield Feeder Lines, Inc., but the bill of sale was never recorded by him with the Civil Aeronautics Administration.

"On or about February 10, 1953 a bill of sale on said aircraft on the form prescribed by the Civil Aeronautics Administration (form ACA 500 (5-48)) was executed and delivered by Springfield Feeder Lines, Inc. to Margal Aviation Corporation, the purchaser named therein, and was duly recorded with said Civil Aeronautics Administration and said aircraft was registered in the name of Margal Aviation Corporation as owner.

"This bill of sale was obtained by Alfred N. Rudich who falsely and fraudulently represented to Springfield Feeder Lines, Inc. that it was a certificate reciting in substance that there were no liens or encumbrances on the aircraft.

"On March 15, 1954, the plaintiff purchased said aircraft from Margal Aviation Corpora-

tion and received therefor a bill of sale. Thereafter, the Plaintiff recorded said bill of sale and registered said aircraft with said Recordation Branch of the Civil Aeronautics Administration and under the date of March 23, 1954 was issued a Certificate of Registration.

"The Plaintiff paid the Margal Corporation $5,000.00 for the aircraft.

"At the time he purchased the aircraft the Plaintiff had no knowledge of the bill of sale from Springfield Feeder Lines, Inc. to Alfred W. Rudich.

"At the time he purchased the aircraft the Plaintiff had no knowledge of the attachment of the aircraft made by the Defendant on January 9, 1953.

"On April 20, 1954, the Plaintiff through his attorney made a written demand upon the defendant to release the aircraft from attachment. This was not done.

"On August 3, 1954 the Defendant sold said aircraft at a sale held under an execution obtained by the Hawthorne Management Company, Inc. in its suit against Alfred W. Rudich."

The Court found for the Plaintiff.

The Defendant filed, among others, Requests for Rulings numbered 1, 4, 5, 6, 9, 10, 12, 13, 14, and 15, as hereinafter recited, which were denied.

"1. The evidence does not warrant a finding for the plaintiff.

"4. Registration of the said airplane by the plaintiff, Joe Marrs, under Federal law (U.S.C. Title 49, sec. 521) is

not evidence of ownership of the said airplane in this action of Joe Marrs vs. Leon J. Barbeau, this being an action in which the ownership of said airplane by a particular person is in issue.

"5. The registration of said airplane by Joe Marrs with the Civil Aeronautics Administration on or about March 23, 1954 has no legal effect in the determination of this action for conversion of said airplane by Joe Marrs vs. Leon J. Barbeau.

"6. At the time of the purported sale of said airplane by Margal Aviation Corporation to Joe Marrs, the plaintiff in this action, on March 15, 1954 said Margal Aviation Corporation had no title to said airplane, and no title thereto passed to the plaintiff Joe Marrs.

"9. The levy made by this defendant, Leon J. Barbeau, on said airplane was a legal and valid levy under the laws of the Commonwealth of Massachusetts.

"10. The sale of said airplane under execution made by the defendant, Leon J. Barbeau, on August 3, 1954 was a legal and valid sale under the laws of the Commonwealth of Massachusetts.

"12. The said airplane was not as against the defendant, Leon J. Barbeau, the property of the plaintiff as alleged by the plaintiff.

"13. The plaintiff, Joe Marrs, did not have the right to possession of said airplane at any time as against the defendant, Leon J. Barbeau.

"14. The plaintiff, Joe Marrs, never had legal title to said airplane.

"15. The plaintiff, Joe Marrs, never acquired ownership of the said airplane."

Defendant's Request No. 7, in terms, "The defendant in this action, Leon J. Barbeau, acting as Deputy Sheriff, acted legally and properly in his capacity as Deputy Sheriff of

the County of Hampden in attaching said airplane and selling it under execution issued by the Hampden County Superior Court in the action of Hawthorne Management Company, Inc. vs. Alfred W. Rudich.", was denied for the stated reason "that the defendant failed to record his attachment with the Civil Aeronautics Administration."

The defendant also filed Request for Ruling No. 11, which was neither allowed nor denied but which we treat as being denied, and which is in terms, "The defendant, Leon J. Barbeau, did not convert the said airplane to his own use as alleged by the plaintiff."

This case presents the question of whether the plaintiff in view of the Federal act entitled "Recordation of Aircraft Ownership" 49 USC, §523, and more particularly subsection (3) (c) thereof, had title to the aircraft superior to the title of Rudich, whose interest therein was attached by the defendant for the attaching creditor, Hawthorne Management Company, Inc. Said Sub-section (3) (c) reads as follows:

*"Validity — Effective date.* No conveyance the recording of which is provided for by section 503 (a) (1) (subsec. (a) (1) of this section) made on or after August 22, 1938, and *no instrument the recording of which is provided for by section 503 (a) (2) or section 503 (a) (3)* (subsec. (a) (3) of this section made on or after the effective date of this section (June 19, 1948), shall be valid in respect of such aircraft, aircraft engine or engines, propellers, appliances, or spare parts

against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Administrator. For the purposes of this subsection (c), such conveyance or other instrument shall take effect from the time and date of its filing for recordation, and not from the time and date of its execution."

Rudich had obtained a Bill of Sale to the aircraft from Springfield Feeder Lines, Inc. prior to January 9, 1953, which was not recorded. On the latter date the defendant attached it as hereinbefore mentioned, but did not record the attachment. On February 10, 1953, Rudich, presumably because he had learned of the attachment by his creditor, fraudulently obtained another Bill of Sale of the same personalty running to Margal Aviation Corporation, from Springfield Feeder Lines. This Bill of Sale was duly recorded in accordance with Federal statute above cited and quoted.

Margal Aviation Corporation, on March 15, 1954, gave its Bill of Sale to Marrs Aircraft. This was duly recorded; and the aircraft registered in the name of Marrs Aircraft, the plaintiff, on March 23, 1954. Marrs Aircraft took title, for value, and without notice of either the fraud of Rudich or of the attachment by the defendant on behalf of Hawthorne.

Much as we might be inclined to sympa-

thize with the defendant's argument that Rudich, Margal Aviation Corporation, and/or its officer or officers, as well as the plaintiff, conspired together to deprive Hawthorne of the benefit of the attachment, the fact is that the Trial Court did not so find; but rather, by its findings, implied the contrary.

The language of 49 USC, §523 (3) (c), is unequivocal and negates the effect of a conveyance of an aircraft "until such conveyance or other instrument is filed for recordation". It would follow that the unrecorded Bill of Sale from Springfield Feeder Lines to Rudich did not become "valid" as against any person other than one by whom the conveyance is made, or any person having actual notice of it. And it would seem that the attachment by the defendant on behalf of Hawthorne is comparable to a conveyance within the meaning of said Section (3) (c), though it was a lien created ex parte, which, unrecorded, also never became valid.

c.f. G. L. (Ter. Ed.), c. 183, §4; and see as to the purpose of the section, namely to show the condition of the title, as set forth in *Lamson & Co. v. Abrams,* 305 Mass. 238, 244.

And the purpose of it is to protect subsequent purchasers against prior and unrecorded conveyances. *Philadelphia, etc. Iron Co. v. Boston,* 211 Mass. 526, 531.

See also G. L. (Ter. Ed.) c. 223, §§63 and 64, to the effect that an attachment of realty is not valid unless the attaching officer deposits a certified copy of the original Writ in

the Registry for the district where the land lies; and §§50 and 51 as to attachment of bulky property.

The defendant stoutly argues that 49 USC, §521 (f), provides that "Registration shall not be evidence of ownership of aircraft in any proceeding in which such ownership by a particular person is or may be in issue."

But the fact still remains that in accordance with Subsection (3)(c) above quoted, the conveyance shall not be "valid" until the document purporting to pass title is recorded. The inconsistency, if any, must be resolved on a substantive, rather than on an adjective law basis. Moreover, there was plenty of other evidence and stipulated facts on which the Court could find, and in fact did find, both specifically and by its general findings, that the ownership of the aircraft was in the plaintiff, by virtue of a title traceable back to Margal Aviation Corporation, and to Springfield Feeder Lines. Thus it was established that plaintiff obtained a title superior to the title of Rudich. *Atlantic Transportation Co. v. Alexander Ship. Co.,* 261 Mass. 1, 10.

The Court did not err in refusing to rule as set forth in Requests No. 1, 6, 9, 10, 12, 13, 14, and 15, and refusing to grant or deny Request No. 11.

Requests No. 4, 5, and 7, in view of the Court's findings, became immaterial. Their denial was not prejudicial to the defendant.

*We find no prejudicial error.*

*Brooks* and *Wallace,* Counsel for Plaintiff.

*Edward B. Landis,* Counsel for Defendant.